## MOONEY *v.* ROWLAND.

Opinion delivered April 17, 1897.

FAMILY SETTLEMENT—SPECIFIC PERFORMANCE.—A parol agreement by an heir relinquishing his share in his ancestor's land in consideration of the release of his indebtedness to the estate and to his co-heirs will be specifically enforced where such agreement has been acquiesced in for twenty-five years, and valuable improvements have been made upon the strength of it.

Appeal from Boone Circuit Court in Chancery.

BRICE B. HUDGINS, Judge.

*W. F. Pace,* and *Dan W. Jones & McCain,* for appellants.

No case for specific performance was made by appellees in their cross-complaint. The parol agreement was within the statute of fraud. There was no consideration shown for it, and no such part performance by entry and making valuable improvements, etc., as to constitute ground for specific performance. 1 Ark. 416; 44 *id.* 346; 39 *id.* 429; 32 *id.* 97; 11 S. W. Rep. 112; Waterman, Spec. Perf. 258; 21 Ark. 277; 4 Wall. 513. As between co-tenants, the doctrine of part performance has no application. Freeman on Co. Ten. §§ 261–2; 44 Ark. 79; 8 Wall. 557. While it is the policy of the law to uphold family settlements, it does not extend to the transfer of title to land by parol.

*O. W. Watkins,* for appellees. *G. J. Crump* and *De Roos Bailey,* of counsel.

The ancestor of appellants having renounced all claim or title, and appellees having relied on such disclaimer, and bought and paid more for the shares of the other heirs, appellants are estopped. Bigelow, Estoppel (5 Ed.), 456, 459; 33 Ark. 468; 37 *id.* 47; 48 *id.* 409; 50 *id.* 430; 96 U. S. 457; 2 Pom. Eq. Jur. §§ 805–6, and note; 36 Ga. 184; S. C. 91 Am. Dec. 761; 72 *id.* 657; 6 Johns. Ch. 167; Broom's Leg. Max. *pp. 174, 290. When co-tenants make a parol partition of lands among themselves, and each one takes exclusive possession of his share thus

alloted, the statute of frauds does not apply. Pomeroy, Spec. Performance, § 121; 36 Miss. 706; S. C. 66 Am. Dec. 581; 4 Tex. 431; 13 Penn. 376; 2 Douglas, 344; S. C. 45 Am. Dec. 257; Freeman on Co-ten. §§ 398, 402; 20 Ark. 615. This was a family settlement, and should be upheld. 2 Cases in Equity, pt. 2, *p. 920; Wood, St. Frauds, § 508; Pom. Spec. Perf. § 121; 2 Swan, 38; 1 Story, Eq. (12 Ed.), § 129; 15 Ark. 275; 42 Am. Dec. 468; 36 Ga. 184; 16 Am. Dec. 35. James Rowland having received more than $800 from his father and his estate, and $500 from his brother John, this furnished a consideration for his conveying his interest. But, treated as a gift, the heirs having gone into possession and made improvements, the agreement to convey will be enforced in equity. 32 Ark. 97; 9 Wall. 1; 101 U. S. 426; Pom. Spec. Perf. § 130; 43 N. Y. 34.

BUNN, C. J. George Rowland, the common ancestor of all the parties to this suit, died intestate in 1856, leaving surviving him Mary Rowland, his widow, and John B. Rowland, James A. Rowland (father-in-law of appellant W. F. Mooney, and father of appellant Mrs. E. R. Mooney and G. M. Rowland), and appellees, R. P. Rowland, M. H. Rowland, Mack Rowland, William Rowland, Elizabeth (mother of George, E. H. and Frank Jefferson), and George H. Rowland, whose only child, Augusta Eoff, is one of the parties defendant herein. John B. Rowland died childless and intestate in 1866, leaving no property except his undivided interest in his father's estate, and one promissory note on James A. Rowland for the principal sum of $522.75, and not having come into possession of his share in his father's estate. Elizabeth Jefferson, *nee* Rowland, died intestate, and not having come into possession of her share of her father's estate, and leaving surviving her the children aforesaid; as also did George H. Rowland. James A. Rowland, father of Mrs. E. R. Mooney and G. M. Rowland, appellants, died intestate, in 1885 or 1886. His wife died in 1860 or 1861, and from that time his children, the appellants, lived with their grandmother, Mary Rowland, at the family homestead, and the testimony tends to show that they and their grandmother were supported by appellees Mack, William and W. H. or "Mat"

Rowland, by whom they were also educated. Mary, the widow of George Rowland, the ancestor, continued to occupy the homestead (reduced'by consent of herself and her children to about 100 acres) until her death, which occurred subsequent to the institution of this suit.

George Rowland at one time gave his son, James A. Rowland, $50, with directions to enter a certain 40-acre tract of land, as is claimed by appellee, which he did, but took the deed in his own name. Subsequently, the evidence shows, James A. sold a portion of this tract, with a piece of his father's land, to one Osborne, and, in consideration that the sale might be undisturbed otherwise, he gave back a portion of this tract to his father, which seems to have constituted a part of the homestead mentioned, or was immediately adjoining it, and agreed to convey the same to him, putting him in possession.

George Rowland died seized and possessed of the lands in controversy, as appears from the testimony, and also certain moneys, amounting to the sum of $829.50, after the settlement of his estate, and this sum finally came into the hands of James A. Rowland.

Sometime in the year 1870, an agreement was made between James A. Rowland and the other heirs of George Rowland, wherein James A. Rowland, in consideration that he should not be called on for the $829.50, but should retain the same, and also should not be required to pay the amount due from him to the estate of John B. Rowland, deceased, in which they all had an equal interest *per stirpes*, agreed to release and quit-claim to the others all his interest in the lands of his father, and also in the share of his brother John B. therein. Immediately, in the presence of James A. Rowland, and by his advice and consent, the other heirs, the appellees, divided the said lands among themselves, except the homestead, which it was agreed should remain intact and undivided during the life of their mother, and each one took possession of and began to make improvements upon his share so allotted him; and this settlement appears to have been acquiesced in by all parties, and by James A. Rowland, father of appellants, as long as he lived, many years thereafter; and long after the claim of the

other heirs against him for the money and debt, released to him as aforesaid, had been barred, his children repudiated the settlement aforesaid by the institution of this suit, which was a suit in ejectment, but which, on the coming in of the answer and cross-bill of the defendants, and on their petition, was transferred to the equity docket, and there determined in favor of appellees on the complaint, answer and cross-bill, and answer to the cross-bill and depositions of witnesses. All the parties appear to have been adults when the suit was instituted. The answer of appellants to the cross-bill was to the effect that they had not sufficient knowledge of the matters and things set up in the cross-bill upon which to form a belief, and therefore, without direct denial, they stood on their position, as defendants in the cross-bill, to demand proof of the allegations therein made.

This is a family settlement, which, under the equity doctrine, will be upheld where to annul it would entail upon the party seeking to uphold it an irreparable loss, unless by so doing some positive principle of law would be violated or disregarded; that is to say, when the facts in evidence make it equitable to do so. *Pate* v. *Johnson*, 15 Ark. 275.

But, aside from any special advantages given to such settlement by the courts of equity over agreements to partition and make settlements of others whose relative situations are different, the evidence in this case plainly and conclusively shows that all the incidents of a parol agreement which are generally regarded as taking a case out of the statute of frauds exists in this case. There was a consideration accruing to James A. Rowland to enter into the agreement, and the amount he thus acquired was more than the value of his interest in his father's and brother's estates. The other parties released their claims on him, and acted upon the faith of his agreement to relinquish his claims to the lands, and upon his long-continued and unchanging acquiescence in the settlement during his whole life; and each entered upon and made valuable improvements on his share, until they sold to their brother Mack, one of their number, and the fee of the whole became united in him, who, especially, went to great expense in improvements thereon as a whole, less the homestead, which for good reasons was left

undivided; and this purchase by Mack of the allotted shares of the others is shown to have been upon the faith of the family settlement.

The decree of the court below was that "the plaintiffs in original suit take nothing by this suit; that defendants in cross-complaint specifically perform the contract made with plaintiffs in cross-complaint by James Rowland, deceased, and that they make deed to said plaintiffs in cross-complaint, conveying the interest of James A. Rowland in said land; that the title of said plaintiffs in cross-complaint to said land in controversy be quieted, and that plaintiffs in cross-bill pay all costs of this suit."

The decree of the lower court is affirmed, and appellants will pay the costs of this appeal.