CALDCLEUGH *v.* CALDCLEUGH.

## Opinion delivered April 9, 1923.

1. FRAUD—UNDUE INFLUENCE.—In determining whether undue influence has been exerted upon a person, all the surrounding circumstances which might make the person susceptible and yielding are to be considered, as undue influence reaches every case where influence is acquired and abused, or where confidence is reposed and betrayed.

2. FRAUD—IMPROVIDENT CONVEYANCE.—Where a widow, while overcome with grief and when she was staying with a brother of her deceased husband, a man of business experience, in whom she had great confidence, without being informed as to her right to a half interest in her husband's lands, conveyed her interest in 326 acres of land in consideration of a conveyance to her by the heirs of 80 acres of land, in which, without her knowledge, deceased's mother had a life estate, *held* that the execution of her conveyance was procured by undue influence.

3. COMPROMISE AND SETTLEMENT—VALIDITY.—Where a widow settled with the heirs of her husband by accepting a substantial portion of his personal property, in consideration of the heirs paying all of decedent's debts, the amount of his debts and the value of his personal property being unknown, a finding of the chancellor that the settlement was not improvident will be sustained, though it afterwards turned out that the personal property was largely in excess of the debts owed by the husband.

4. HOMESTEAD—ABANDONMENT.—Where the owner of a homestead in removing therefrom had an unqualified intention to preserve it as a homestead and to return to it, his removal will not result in an abandonment.

5. EQUITY—MOTION TO WITHDRAW SUBMISSION—LACHES.—A motion to withdraw the submission of a case for the purpose of rebutting certain testimony was properly denied where appellant waited more than a year after the taking of the deposition sought to be rebutted before making the motion.

Appeal from Ashley Chancery Court; *E. G. Hammock,* Chancellor; reversed in part.

STATEMENT OF FACTS.

On April 26, 1920, Carrie Caldcleugh brought suit in equity against A. C. Caldcleugh, H. L. Caldcleugh, Albertine Price and Nancy Ward to cancel a deed which she had executed in favor of all the defendants except

Nancy Ward, on the ground that it had been obtained by undue influence, and also to set aside a settlement of her rights in the personal property of her deceased husband.

Hogan Caldcleugh died intestate and without children. He left surviving him his widow, Carrie Caldcleugh, and his mother, Nancy Ward, his brothers, A. C. Caldcleugh and H. L. Caldcleugh, and Albertine Price, as his sole heirs at law. His heirs at law defended the action of the widow on the ground that they had entered into a fair settlement of their rights in his property, and that this had been consummated by the execution of proper deeds to the realty and a bill of sale of the personalty.

Carrie Caldcleugh was a witness for herself. According to her testimony, she was thirty-three years of age, and married Hogan Caldcleugh on March 17, 1913. Her husband died March 5, 1920, intestate and without issue, owning the real and personal property involved in this lawsuit. At the time of his death he owned 406 acres of land and a lot of personal property, consisting of cotton, mules, cows, hogs, farming utensils, and money. She helped him to accumulate all the land, except eighty acres. Her husband had a homestead in eighty acres of the land, but was not living on it when he died. Her husband died on March 5, 1920, and on the 8th of March, 1920, she executed to Harper L. Caldcleugh and his brother and sister a deed to all of her interest in her husband's land except eighty acres. The heirs at law of her deceased husband on the next day executed to her a deed conveying their interest in the eighty acres which had been reserved from her deed to them. Harper Caldcleugh was a man of experience, and she stayed at his house after the death of her husband. In a short time she found out that the mother of her deceased husband had a life interest in half of the eighty acres which had been conveyed to her by the other heirs of her deceased husband, and that the settlement which had been made with her was improvident. She was staying at the

home of Harper Caldcleugh at the time of. her husband's death, and, being overcome with grief at the death of her husband, relied upon him to make a fair settlement with her.

According to the testimony of Harper Caldcleugh, his brother Hogan owed $5,500 at the time of his death, and he assumed and paid all the debts of his deceased brother. He fully explained to his brother's widow her rights in his property, and she accepted the settlement in question in this case, because it was the division of the property suggested·by her husband in his lifetime.

Other witnesses testified that the plaintiff told them that she had received a division of the land which had been suggested by her husband in his lifetime.

Dr. G. W. Fletcher, a merchant and practicing physician, was present at the settlement and assisted in making it. According to his testimony, he told the widow that she was deeding away all of her interest in the 320 acres of land to the heirs-at-law of her deceased husband, and that they were deeding 80 acres to her. He told her that she could get more if she went to law. She then executed the deed to the heirs-at-law, and on the next day they executed a deed to their interest in the 80 acres to her. No coercion, inducement, or undue influence was used by any person to get the widow to sign the deed. In a few days thereafter they also reached an agreement about the personal property, and she agreed to take certain personal property if Harper Caldcleugh would pay all the debts of the decedent. She then executed a bill of sale as follows:

"Montrose, Ark., March 16, 1920.

"For and in consideration of H. L. Caldcleugh's paying all H. C. Caldcleugh's debts, and giving me the property listed on this, mules, Sam and Maggie, and paying me in cash $300, I deed away all my interest in all other personal property to said H. L. Caldcleugh of whatever nature.

"CARRIE CALDCLEUGH."

It was shown that the debts of the decedent amounted to $5,500, and that his personal property aggregated something over $9,000. The personal property received by the widow consisted of two mules, one horse, two wagons, a buggy, saddle, four cows and calves, a few plows, and $300 in money. She did not get any of the cotton on hand at all.

Other evidence will be stated or referred to in the opinion.

The chancellor set aside the deed executed by the widow on the ground that it was executed through mistake and undue influence. He held that she was not entitled to have the settlement of the personalty set aside. He also held that she was not entitled to a homestead in any of his land, but was entitled to an undivided one-half interest in fee in all his land as her dower.

A decree was entered in accordance with the findings of the chancellor, and to reverse that decree the defendants have duly prosecuted an appeal to this court.

The plaintiff has taken a cross-appeal.

*Geo. Norman* and *U. J. Cone,* for appellants.

Actionable fraud was neither sufficiently pleaded or proved to warrant the setting aside of the settlement made and cancellation of the deeds dividing the lands of the estate. 20 Cyc. 13, 35, 56, 86; 13 C. J. 382, note 279-D; 71 Ark. 305; 38 Ark. 334; 74 Ark. 46; 73 Ark. 547; 11 Ark. 58; 60 Ark. 387; 108 Ark. 343; 45 Ark. 284; 46 Ark. 245; 60 Ark. 281; 101 Ark. 95; 99 Ark. 438; 97 Ark. 15. The facts must be pleaded and proved to a reasonable degree of certainty. 10 Stand. Enc. Proc. 53. 20 Cyc. 13; 10 Stand. Enc. Proc. 57; 26 C. J. 1207, note 88; 95 Ark. 523; 95 Ark. 375. The contract of settlement was not induced by such misrepresentations that equity will refuse to enforce or cancel it. 95 Ark. 523; 11 Ark. 58; 31 Ark. 170; 47 Ark. 148; 83 Ark. 403; 95 Ark. 131; 74 Ark. 231; 22 Ark. 184; 77 Ark. 335. It was a family settlement, and should be adhered to. 15 Ark. 51; 15 Ark. 275; 102 Ark. 232; 74 Ark. 231; 18 C. J. 887, sec. 157,

note 84; 107 Ark. 614; 48 Ark. 93. They are looked upon with peculiar favor and given liberal construction. 18 C. J. 888, sec. 158, note 92; 41 Ark. 270; 64 Ark. 19; 84 Ark. 610; 102 Ark. 659. Proof insufficient to warrant setting aside settlement on ground of mistake. Clark's El. Law, 170, sec. 132; 15 Ark. 275; 101 Ark. 461; 108 Ark. 503; 132 Ark. 227; 14 Ark. 482. Court erred in refusing to admit evidence offered. 55 Ark. 163; 37 Ark. 398; 37 Ark. 571; 30 Ark. 313; 32 Ark. 585; *Winn* v. *State,* 43 Ark. 151. Discretion abused. 38 Cyc. 1363 N. 84, 1365 N. 97, 1352-3. Proper rule. 1 Thompson Trials, sec. 346, 348; 38 Cyc. 1357-8-9, 1361, 1365-6, 1450, 1454, 21 C. J. 23, N. 1, N. 8; 229 U. S. 530. Duty of court as to amendments. 21 C. J. 580, N. 712; 69 N. E. 696, 32 Ind. App. 281; 16 Am. Dig. Dec. Ed. 546; § 4206, Crawford & Moses' Digest; 31 Cyc. 360-1, 367, 370, 372, 373, 426; 8 Stand. Proc. 488. Must be heard on merits. 38 Cyc. 1296 N. 79, 1361-2 N. 64. Court erred in refusing to allow withdrawal of submission and taking of further testimony.

*R. W. Wilson* and *Compere & Compere,* for appellee.

The chancellor's finding that the settlement was procured through undue influence should be upheld. 237 S. W. 703. The widow was overreached and imposed upon, and there was no such family settlement as the law favors. 107 Ark. 615; 85 Ark. 363, 2 Pom. Eq. § 956; 13 C. J. 366, sec. 239; Pom. Eq. 1748-9-50, § 956; 75 Ark. 240; 2 Pom. Eq. 849, 948, 951; *Parker* v. *Hill,* 85 Ark. 363; 10 R. C. L. 310, sec. 52, 312, sec. 55. Mistake relieved against. 75 Ark. 240; 69 Ar. 406; 13 C. J. 366-B; 39 Cyc. 1211-4, 1212-5; 86 Ark. 460. Appellee was the widow of Hogan Caldcleugh, and filed suit after she had been fraudulently stripped of all property belonging to her as such, and within less than two months after death of her husband, March 4, 1920, and ample time was given for the taking of all testimony. Taking of testimony was ordered finished within 30 days after May, 1921, and defendant had taken no testimony after De-

cember, 1920.    241 S. W. 21; 21 C. J. 582, sec. 717.
Burden on appellants to show appellee's marriage illegal. 131 Ark. 225, 18 R. C. L. 417. On cross-appeal, widow was entitled to homestead. 134 Ark. 291; 134 Ark. 519; 130 Ark. 481. Burden on appellants is to show homestead abandoned. 100 Ark. 399.

HART, J., (after stating the facts). We do not think that the chancellor erred in holding that the deed of the widow to the heirs at law of her deceased husband was procured by undue influence on their part. Undue influence has a broad field to work upon in the condition of the person influenced. All the surrounding circumstances which might make him susceptible and yielding are to be considered. The doctrine of equity concerning undue influence reaches every case "where influence is acquired and abused or where confidence is reposed and betrayed."

In the instant case the undisputed evidence shows that Hogan Caldcleugh died without issue, owning 406 acres of land. His personal property was sufficient to pay his debts. Having died without children, his widow was entitled to one-half of his real estate. Crawford & Moses' Digest, § 3536.

It is true that Harper Caldcleugh and Dr. Fletcher testified that no coercion or undue influence was exercised to cause her to execute the deed, but, when the surrounding circumstances are considered, we are persuaded that such was not the case. Dr. Fletcher admits that he told her that she could get a greater interest in her husband's estate by going to law. The settlement was made and the deed was executed by the widow three days after her husband's death. She was overcome with grief at the time, and naturally did not wish to enter into a lawsuit with her husband's brothers, sister and mother. She was staying at Harper Caldcleugh's home at the time. She knew that he was a man of great business experience, and had implicit confidence in him. She was not informed that her husband's mother would inherit a life

interest in his real estate. She was not informed what her dower rights were in the premises. She was only told that she could secure a greater interest by having a lawsuit. All these circumstances operated to cause her to execute a deed whereby she conveyed a large proportion of her interest in her husband's land. In other words, he died owning 406 acres of land, and she was entitled to one-half of it as dower She conveyed away all her interest in his land to his heirs-at-law in consideration that his brothers and sister should convey to her their interest in 80 acres of his land. The mother of her deceased husband retained her life interest in this 80-acre tract.

The execution of the deed by her was procured by undue influence within the rule announced above. and the chancery court properly set it aside. 2 Pomeroy's Eq. Juris., 3rd ed., sec. 951; and *Parker v. Hill*, 85 Ark. 363.

The settlement with regard to the personal property was had on the 16th day of March, 1920. She conveyed her interest in it in consideration of Harper Caldcleugh paying the debts due by her deceased husband's estate and for certain personal property received by her. It is true that it turned out that the personal property was largely in excess of the debts owed by her husband, but at the time the settlement was made it was not known what the amount of his debts would be or what the value of the personal property of her husband's estate would be. We do not think that the settlement with regard to the personal property was improvident, and the decree of the chancellor, in so far as it sustains the settlement and division of the personal property between the widow and the heirs of her deceased husband, will be upheld.

We are of the opinion that the court erred in holding that the homestead had been abandoned. It is well settled that a removal from the homestead, where there is a fixed and abiding intention to return to it, will not

constitute an abandonment of it as a homestead. An abandonment of a homestead is almost, if not entirely, a question of intent, which must be determined from the facts and circumstances attending each case. A removal from the homestead may be caused by necessity or for business purposes, and if the owner has an unqualified intention to preserve it as a homestead and return to it, his removal will not result in an abandonment of the land as a homestead. *Stewart* v. *Pritchard,* 101 Ark. 101; *Melton* v. *Melton,* 126 Ark. 541; and *Dean* v. *Cole,* 141 Ark. 177.

According to the testimony of the widow, there were 80 acres of land in what her husband called the home place. He had said that he was going to build a new house on it and move back to it. She expected to move back there with him. Her husband had, before his death, placed lumber on his home place for the purpose of building a new home. There were already two small houses on it. There is nothing in the record to contradict her testimony, except the fact that her husband had moved from his homestead and was not living there at the time of his death. When we consider that he had always stated that he intended to return to his home place and had already bought the lumber for the purpose of building a new home, we do not think that the chancellor was right in holding that the facts and the attending circumstances constituted an abandonment of the homestead by Hogan Caldcleugh.

It follows that the chancellor erred in holding that the widow was not entitled to a homestead as well as dower in the land of her deceased husband. The widow is entitled to the homestead, not as dower in the estate of her deceased husband, but in addition thereto. *Horton* v. *Hilliard,* 58 Ark. 301; *Ex parte Grooms,* 102 Ark. 322; and *Jameson* v. *Jameson,* 117 Ark. 142.

The result of our views is that the chancellor erred in refusing to allow the widow a homestead, and for that error the decree will be reversed, with directions to enter

a decree in accordance with this opinion  In all other respects it will be affirmed.

OPINION ON REHEARING.

HART, J.  Counsel for appellants complain that the court did not discuss the action of the court below in overruling their motion to withdraw the submission of the case for the purpose of taking further testimony.

This motion was not filed until the 26th day of January, 1922.  The case was submitted on November 22, 1921.  The testimony of Ben Jones was taken on December 6, 1920.  Hence appellants waited too long.  They were apprised of the fact that Jones claimed that appellee had not been divorced from him when he testified to that fact.  Hence they should have proceeded with diligence to take additional testimony on this point if they intended to rely upon it, and should not have waited until more than a year had elapsed before attempting to do so.

The motion for rehearing is denied.