. OUTLAW v. FINNEY.

Opinion delivered November 28, 1927.

1. DESCENT AND DISTRIBUTION—FAMILY SETTLEMENT—FRAUD.—Where there is a confidential relation between relatives dealing in respect to inheritance or distributive shares of an estate, equity will relieve the party yielding to the coercive influence of the other, the parties being required to deal with the utmost good faith toward each other.

2. DESCENT AND DISTRIBUTION—RELIEF AGAINST FRAUDULENT SETTLE-MENT.—The evidence *held* to require that a family settlement be set aside as a legal fraud on an ignorant widow, who was induced by false representations to convey property to the brother and sister of her deceased husband, thereby depriving herself of dower interest and homestead rights.

Appeal from Bradley Chancery Court; *E. G. Hammock,* Chancellor; reversed.

STATEMENT OF FACTS.

On March 3, 1926, Mrs. Ida Outlaw brought this suit in equity against Mrs. F. E. Finney and William Snow, to set aside a deed and mortgage which she had executed to them in a family settlement of her husband's estate.

The plaintiff was a witness for herself. According to her testimony, she married T. R. Snow on the 13th day of November, 1924, in Bradley County, Arkansas, and he died intestate in that county on the 27th day of December, 1924. He left surviving him as his widow, Ida Snow, who subsequently married Cal Outlaw. At the time of their marriage, T. R. Snow resided on a tract of land comprising 4 15/16 acres of land about half a mile west of Warren, Bradley County, Arkansas. At the time of his death T. R. Snow owned this tract of land on which they resided, and also another tract of land in the town of Warren. T. R. Snow bought the 4 15/16-acre tract from John W. Adams on the 14th day of October, 1924, and the consideration in the deed was $1,200. Eight hundred dollars of this amount was paid in cash and $400 in deferred payments, payable one and two years after date, evidenced by two promissory notes of $200 each. Twelve hundred dollars was all the place was worth at the time

the family settlement was had between the parties in this lawsuit, in April, 1925. The town property owned by T. R. Snow at the time of his death was worth $1,900, and there was a balance on a mortgage of $1,000 on it from a building and loan association in the sum of $800. At the time T. R. Snow died he left surviving him his widow, the plaintiff, and a brother and a sister, who are the defendants, as his sole heirs at law. When T. R. Snow married the plaintiff he had a stock of goods, which he told her inventoried about $450. He sold this stock of goods at retail on credit, before he died, and had collected very little of the purchase money. The plaintiff collected an insurance policy on his life, of which she was the beneficiary, in the sum of $1,000, and paid out of it $679 on his funeral expenses and family debts. The plaintiff continued to reside at the home place, and, in April, 1925, the defendants came to her and proposed a family settlement of the affairs of her deceased husband. The sister told her that a settlement would be better than a lawsuit. The sister told her that she and her brother would let her have the home place, if she would take it as her part of the estate and assume the mortgage on it, and would convey to them the town property. They agreed to assume the mortgage on it. According to the understanding of the plaintiff, this was to be a full settlement of their rights in the property of her deceased husband. They carried her to a lawyer's office in the town of Warren, and they executed mutual deeds to each other, as she understood it; that is she executed a deed to them to the town property, and they executed a deed to her to the home place. The home place had four little tenant houses on it, which rented for eight dollars per month each. The plaintiff had erected these houses with her own money. In February, 1926, the plaintiff ascertained that she had signed a mortgage on the home place to secure a note of $800, payable to the defendants, which purported to have been signed by herself. On February 9, 1926, the plaintiff wrote to the defendant, William Snow, stating that she had just learned of the fraud that had been practiced on her. She

first found out about the mortgage purporting to have been signed by her on the home place when she sought to have an abstract made of the property. The $800 note was payable on demand, and bore interest at the rate of five per cent. per annum from date until paid. There is also written in the note the following:

"This note is payable $20 per month, beginning June 1, 1925, and so payable until principal and interest are paid. Failure to make three monthly payments, or $60 in arrears, brings the whole amount due."

Mrs. F. E. Finney was not a witness in the case.

According to the testimony of William Snow, he had nothing to do with making the agreement. It was made between his sister and the widow of the deceased. Twenty dollars was paid on the mortgage indebtedness.

The plaintiff denied having paid twenty dollars on the mortgage indebtedness, or that she knew that there was a mortgage on the land until she sought to have an abstract of title made.

The chancellor found that the evidence fails to sustain the allegation of the plaintiff's complaint, and it was decreed that it should be dismissed for want of equity. The case is here on appeal.

*Wilson & Martin,* for appellant.

*J. F. Wallace,* for appellee.

HART, C. J., (after stating the facts). Counsel for the defendants seeks to uphold the decree under the decision of *Martin* v. *Martin,* 98 Ark. 93, 135 S. W. 348, to the effect that family settlements are encouraged, and will not be disturbed unless strong reasons exist to warrant interference on the part of a court of equity. On the other hand, counsel for the plaintiff seeks to reverse the decree upon the authority of *Caldcleugh* v. *Caldcleugh,* 158 Ark. 224, 250 S. W. 324; where it was held that, in determining whether undue influence had been exerted upon a person, all the surrounding circumstances which might make the person susceptible and yielding are to be considered, as undue influence reaches every case where influence is acquired and abused or where confidence is reposed and betrayed.

In the Martin case it was said that courts of equity have uniformly upheld and sustained family arrangements in reference to property where no fraud or imposition was practiced. Equity is anxious to encourage and enforce these settlements, in order to preserve the peace and harmony of families. This doctrine is recognized in the Caldcleugh case, but it was also recognized that, where fraud or undue influence is practiced, the family settlement will be set aside. This is in application of the well-established rule that, where there is a confidential relation between relatives dealing in respect to an inheritance or distributive shares of an estate, equity will readily relieve the party who has yielded to the coercive influence of the other. In such cases, the parties are required to deal with the utmost good faith towards each other, and equity will readily seize upon any fraud or unconscionable practice by one towards the other to induce the settlement.

In the present case it is a significant fact that Mrs. Finney, the sister, and the attorney employed by the brother and sister to draw up the deed and mortgage, were not called as witnesses in the case. No reason is given for the failure to introduce them as witnesses. The plaintiff testified in her own behalf, and, in the course of her testimony, stated that she desired to tell the matter just as it happened. She testified that the home place, which consisted of 4 15/16 acres, was not worth more than $1,200. She is corroborated in this statement by the fact that her husband purchased the property for that sum a short time before his death, and paid for it partly in cash and partly on credit. The plaintiff said that the town property which she deeded to the defendants was worth $1,900. She is corroborated in this statement by the fact that her husband had obtained a mortgage from a building and loan company in the sum of $1,000 on the property, and $800 of this amount was due and unpaid. As we have already seen, no attempt whatever was made by the defendants to dispute as to the relative values of these two pieces of property. It is true that the husband

had a small stock of goods, which he had purchased in the fall before his death, but the plaintiff testifies that he had sold nearly all the goods at retail, on credit, and that she had not been able to collect anything on the accounts. It is also true that she received $1,000 life insurance on her husband's life. She was the beneficiary named in the policy, and might have kept the whole of it, but the record shows that she paid out $679 of this amount on the funeral expenses and debts of her deceased husband. According to her own testimony, she was an ignorant woman, and could scarcely read and write. No attempt was made to dispute her testimony on this point. It is true that she waited nearly a year before she attempted to rescind the settlement, but she explains this by saying that she did not know that she had given a mortgage to the defendants until she sought to have an abstract of title made on her place. She supposed that she had only executed a deed to the defendants to the town property, and that they had executed a deed to her to the home place. It will be remembered that she was an ignorant woman, and unaccustomed to signing deeds or to executing any kind of papers. She is corroborated, to some extent, on this point by the fact that no attempt had been made by the defendants to collect the mortgage debt. The note first stated that it was payable on demand. Then there was written in it a clause to the effect that it was payable monthly at the rate of $20 per month, beginning on June 1, 1925, and that the failure to make three payments made the whole note due. Notwithstanding the clause and the failure to make payments, no attempt had been made by the defendants to collect any interest on the note, even though it purported to draw interest at five per cent. per annum from date until paid. The surrounding circumstances all corroborate the testimony of the plaintiff, and, as we have already seen, no attempt whatever was made by the defendants to contradict the testimony of the plaintiff.

Therefore we are of the opinion that the testimony brings the case squarely within the principles of law

announced in the Caldclough case.  The plaintiff was an ignorant woman, and considered, when the defendant, Mrs. Finney, told her that it was best for all parties to have a family settlement instead of resorting to legal procedure, that they were threatening her with legal action unless she yielded to their demands.  In this connection it may be stated that T. R. Snow died without children, and his widow was entitled to one-half of his real estate. If the settlement as made should be allowed to stand, the result would be that the plaintiff would not receive anything whatever; for the $800 mortgage would absorb all her equity in the home place, and she has conveyed to the defendants her interest in the town property.  Nothing would be left her except some worthless notes, and she would, by the terms of the settlement, have given to the defendants, under the guise of a family settlement, all her interest as widow in her deceased husband's estate. It will be remembered that, in addition to her dower interest, she would be entitled to the homestead for her life.

We are of the opinion that the chancellor should have set aside the family settlement as a legal fraud upon the rights of the plaintiff, or as having been procured by coercion or undue influence, in view of the fiduciary relation between the parties, and the decree will be reversed, and the cause remanded, with directions to the chancery court to set aside the family settlement and to allow to the plaintiff her rights of dower and of homestead under our statute.  It is so ordered.