JOHNSON *v.* WILLIAMS.

4-7273 179 S. W. 2d 654

Opinion delivered April 3, 1944.

*L. B. Smead,* for appellant.

*Graves & Graves,* for appellee.

GRIFFIN SMITH, Chief Justice. December 31, 1941, Victor S. Johnson[1] paid Reafus Williams and Mattie Wyatt[2] $600 for an oil and gas lease on eighty acres in Hempstead County.[3]

It was stipulated that Cornelius Epps was the owner of 144 acres, of which the 80 acres leased to Johnson were a part. Epps died "between 1890 and 1900." His heirs were named in the agreed statement. John, Frank, Bob, and Miranda (the latter having married Williams) were children of Cornelius. Frank .predeceased his father. His children were William, Thomas,

---

[1] A resident of Chicago, Illinois.

[2] Reafus and Mattie are brother and sister.

[3] After the appeal was lodged here, the death of Victor S. Johnson was suggested and his cause of action revived in the name of Alex Thompson, Administrator. It was shown that Johnson was survived by his widow, Minnie F. Johnson, and three children, Mildred E. Wolcott, Victor S. Johnson, Jr., and Robert E. Johnson, the children being the sole heirs and of age.

and Fannie. Fannie died without descending heirs. Bob died intestate, survived by one child, Sylvester.[4]

As one of the attorneys has expressed it, "for the purpose of this trial" it may be said that following the death of Cornelius, John and Miranda each owned an undivided third interest in 144 acres, while William and Thomas (sons of Frank) each owned an undivided sixth interest. Certain descendants of Cornelius (some of whom were children of John, while other were children of Miranda) will be referred to later.

Following her father's death—which probably occurred in 1899—Miranda and her husband, who had been living on another farm, separated. Miranda moved into the house formerly occupied by Cornelius. When Cornelius died there were two houses on a part of the land designated as the 64-acre tract. Cornelius occupied one of these houses, while John (who died in 1928) lived in the other. Miranda subsequently moved to the 80-acre tract. At the time of trial John's heirs occupied or claimed the 64 acres, and Miranda's heirs occupied or claimed the eighty. Until her death in 1919 Miranda occupied the 80 acres. Albert Williams (son of Miranda) moved away in 1921. He was followed by John Moore, who as tenant occupied the premises for three or four years. Three of Miranda's heirs now live on the 80 acres — Reafus Williams, Mattie Wyatt, and Lizzie Wyatt.

In 1907 the entire tract left by Cornelius forfeited for taxes. Miranda and John—in separate accounts—were indebted to Briant and Company and to Reed and Company. Briant and Company, in the name of S. H. Briant, redeemed in 1911, as evidence by clerk's deed. The 80 acres were sold to L. D. Reed, and Reed in turn made bond for title to Miranda and later conveyed. Briant conveyed the 64 acres to John Epps. There is evidence that John, as to the 64 acres, and Miranda, as to the 80 acres, or their heirs, claimed the properties.

[4] Sylvester died intestate while a young unmarried man and, therefore, without issue.

The Chancellor found that John and Miranda had agreed upon the division, but recognized that each of Frank's heirs was a sixth owner. Briant's purchase at the tax sale was treated as a redemption. It was further found that at all times subsequent to the death if Miranda and John, their children had acquiesced in the division made by the parents, and that there was an arrangement whereby those who occupied the land should pay taxes, make improvements, and retain the proceeds. This "family settlement," it was held, was binding upon such heirs.

In 1930 Miranda's children [5] mortgaged the 80 acres to Doctors Don Smith and L. M. Lile, who subsequently undertook to foreclose.

In June, 1941, brothers and sisters of Reafus Williams and Mattie Wyatt quitclaimed to them. There is testimony that these parties, as claimants of the 80 acres, sought to delay the proceedings instituted by Smith and Lile. The plan was that if ownership were shown in Reafus and Mattie, who actually occupied the premises, recourse might be had to benefits of the Frazier-Lempke Act. Whether purchasers of the oil lease were charged with knowledge that the *prima facie* title thus shown in Reafus and Mattie was subject to the outstanding interests of Frank's heirs was a matter as to which testimony was heard.

There were numerous transactions, some unimportant, which it is contended shed light upon conduct and intentions of the plaintiffs below, dating from the time Miranda returned to her father's home. Frank's heirs had been gone forty-two years. It is argued that their acts constituted abandonment, but if actual intent to abandon should not be implied, then they were guilty of laches.

Briefly stated, effect of the decree is that the partition agreed upon by John and Miranda, while binding upon their heirs, did not affect the interests of William

---

[5] Sam Williams, Ola Wyatt, Reafus Williams, Julia Boyd, Albert Williams, Lizzie Wyatt, Mattie Wyatt, and Ezell Williams.

and Thomas, who were Frank's children; hence, it was held that Frank's heirs still retained ownership of an undivided third of 144 acres. Inasmuch as the 80-acre tract only is included in the Johnson lease, no further reference to the 64 acres is necessary if it be held that the Chancellor's findings against abandonment, laches, etc., were not contrary to a preponderance of the evidence.

An inference might be drawn from the fact that Frank's heirs, who for more than forty years had not exercised acts of dominion over the land, intended that it should go to their aunt and uncle, or their children. They did not pay taxes. When Johnson's agent—Harry B. Barnhart, a Texas attorney—made preliminary investigations leading to the lease, he did not ascertain that William and Thomas were interested parties; neither did he have information that Miranda's children, in executing to Reafus and Mattie the deed of June 3, 1941, in effect made trustees of the grantees in that the purpose was to facilitate the plan to clear the land of debt, after which it was to be reconveyed. Barnhart met an attorney of Hope—G. P. Casey—who represented Reafus. Casey mentioned the bankruptcy (Frazier-Lempke) matter. The Williams-Wyatt lease had been brought to Barnhart's attention by Vincent W. Foster, a Hope dealer.

Substance of Barnhart's testimony is that he took the precautions ordinarily followed in such matters: examined records, procured a list of creditors, had an abstract brought down to date, and deposited money in escrow to be paid the grantors when the mortgage should be satisfied.

Our view is, as the Chancellor found, that Johnson was an innocent purchaser in respect of the interests Lizzie, Ola, Ezell, Albert, Julie, and Sam quitclaimed to Reafus and Mattie, but that all of these parties jointly held a third of the eighty subordinate to Frank's heirs.

Action of Reafus and Mattie, as reflected by this record, was not such as to divest William and Thomas

of the interest left by their grandfather. The Court did not err in so holding.

When it is determined that William and Thomas did not lose their inheritances, and that as to them the so-called family settlement was not binding, but that it did bind the lineal heirs of John and Miranda, other issues become unimportant.

Affirmed.

McFADDIN, J., not participating.