PFAFF, ADMINISTRATRIX *v.* CLEMENTS.

4-8583                                    213 S. W. 2d 356

Opinion delivered July 5, 1948.

Rehearing denied October 4, 1948.

*John R. Thompson, Bailey & Warren* and *Walls Trimble,* for appellant.

*U. A. Gentry,* for appellee.

ED. F. McFADDIN, Justice. The decisive question is the validity of the alleged family settlement.

In 1946, Samuel Ernest Pfaff died intestate, survived only by (a) Terrence Pfaff, a son; (b) Justine Pfaff Petre, a daughter; and (c) two grandchildren, Carel Heizman Clements and Carl E. Heizman II, who were the only children of Ernestine Pfaff Heizman, a daughter of Samuel Ernest Pfaff, who had predeceased her father. Terrence Pfaff was appointed administrator of the estate of Samuel Ernest Pfaff, but before completion of the administration, Terrence Pfaff died intestate and childless. He was survived by (a) his wife,

Anna Mae Pfaff; (b) his sister, Justine Petre; (c) his niece, Carel Heizman Clements; and (d) his nephew, Carl E. Heizman II, as his sole and only heirs at law. The nephew was a minor; the sister and niece were adults. The estate of Samuel Ernest Pfaff consisted of both realty and personalty; and the estate of Terrence Pfaff consisted in part of the inheritance from the estate of Samuel Ernest Pfaff.

Mrs. Petre, Mrs. Clements and Carl E. Heizman II voluntarily signed and delivered to Anna Mae Pfaff (the widow of Terrence Pfaff) an instrument reading:

"We, the undersigned heirs to the estate of the late Samuel Ernest Pfaff, request that Mrs. Anna Mae Pfaff, widow of Terrence O. Pfaff, deceased, be granted one-third (1/3) of the estate of the late Samuel Ernest Pfaff, and which the late Terrence O. Pfaff would have received."

It is not claimed that there was any fraud, imposition or over-reaching by Mrs. Anna Mae Pfaff in obtaining the instrument. Mrs. Petre testified: "A. Well, Anna Mae called and asked me if I would sign a paper giving her my brother's share of the estate, and we were all grief stricken and felt sorry for her, and told her we would sign it; so she came over to my house, and I was in bed at the time, and we made out this—written long hand—to the effect of what we wanted to write, giving her the share, and she typed it herself and brought it back to me after that to sign it, and I signed and had Pat[1] sign, and then we carried it out to Carel and she signed it."

And, again, Mrs. Petre testified: "A. Anna Mae called me over the phone and wanted to know if we would sign that paper. That was before it was ever drawn up, and she said she had to guarantee the funeral expenses out at the undertaker's and wanted to know if we would sign this paper and we told her we would. Q. And you knew when you signed it, Anna Mae was going to guarantee those funeral expenses, didn't you? A. Anyone

---

[1] "Pat" appears to be the nickname of Carl E. Heizman, II.

would; it was her responsibility. Q. And she told you she would guarantee it if you would sign that? A. She said she wanted to submit the paper to the undertaker. Q. You signed it so she would have the paper to submit to the undertaker? A. I signed it because I felt sorry for her. Q. Why did you tell Carel that you wanted her to sign it so she could present it to the undertaker? A. Because that is what Anna Mae told me.''

Later, each of the signers—that is, the sister, niece and nephew of Terrence Pfaff—decided to repudiate the said instrument. This litigation was instituted by them in the chancery court to have such repudiation judicially declared. Since Carl E. Heizman II is a minor, his legal right of repudiation is admitted; but appellant (defendant below) denied the right of the sister and niece— that is, Mrs. Petre and Mrs. Clements—to repudiate the instrument, which defendant claimed was a valid ''family settlement.'' From a decree of the chancery court allowing such repudiation, there is this appeal.

The appellees (plaintiffs below) thus state the issue here: ''The sole question to be determined is the legal effect of the instrument signed by the appellees, and whether or not the same might be revoked by the signatory parties.''

Appellees further state their position, regarding the alleged family settlement, in this language: ''Appellant takes the position that the instrument constituted a family settlement, but this position is obviously untenable. There was no settlement of the respective rights of the parties, nor was the instrument executed for the purpose of adjusting, in any manner, the rights of the persons interested in the estate. There was no mutuality of contract and no consideration passing from Anna Mae Pfaff to the signers. The signers merely gave up all interest in the estate which they owned to one not entitled thereto, without any consideration.''

We are thus presented with the question of whether the instrument signed by the appellees was a valid and sufficient family settlement. There is a vast number of cases in Arkansas which have discussed family settle-

ments. Some of them are: *Pate* v. *Johnson,* 15 Ark. 275; *Turner* v. *Davis,* 41 Ark. 270; *Mooney* v. *Rowland,* 64 Ark. 19, 40 S. W. 259; *LaCotts* v. *Quertermous,* 84 Ark. 610, 107 S. W. 167; *Martin* v. *Martin,* 98 Ark. 93, 135 S. W. 348; *Giers* v. *Hudson,* 102 Ark. 232, 143 S. W. 916; *Felton* v. *Brown,* 102 Ark. 658, 145 S. W. 552; *Ellison* v. *Smith,* 107 Ark. 614, 156 S. W. 417; *Dudgeon* v. *Dudgeon,* 119 Ark. 128, 177 S. W. 402; *Sursa* v. *Wynn,* 137 Ark. 117, 207 S. W. 209; *Caldcleugh* v. *Caldcleugh,* 158 Ark. 224, 250 S. W. 324; *Davis* v. *Davis,* 171 Ark. 168, 283 S. W. 360; *Tandy* v. *Smith,* 173 Ark. 828, 293 S. W. 735; *Hollowoa* v. *Buck,* 174 Ark. 497, 296 S. W. 74; *Outlaw* v. *Finney,* 175 Ark. 502, 1 S. W. 2d 38; *Skaggs* v. *Prince,* 176 Ark. 1170, 5 S. W. 2d 927; *Purinton* v. *Purinton,* 190 Ark. 523, 80 S. W. 2d 651; *Edwards* v. *Swilley,* 196 Ark. 633, 118 S. W. 2d 584; *Barnett* v. *Barnett,* 199 Ark. 754, 135 S. W. 2d 828; *Stark* v. *Stark,* 201 Ark. 133, 143 S. W. 2d 875; *Shell* v. *Sheets,* 202 Ark. 708, 152 S. W. 2d 301; *Randall* v. *Kimball,* 205 Ark. 970, 172 S. W. 2d 22; *Mills* v. *Alexander,* 206 Ark. 754, 177 S. W. 2d 406; and *Johnson* v. *Williams,* 207 Ark. 94, 179 S. W. 2d 654. In these cases there is the common refrain that family settlements are favored, and should be encouraged where no fraud or imposition was practiced.

Similar general statements regarding family settlements may be found in the standard textbooks. There are annotations on family settlements in 6 A. L. R. 555; 38 A. L. R. 759; and 54 A. L. R. 976. See, also, 12 C. J. 322, 362; 15 C. J. S. Compromise and Settlement, §§ 3, 9, pp. 715, 727; 58 C. J. 992; 5 R. C. L. 880; and 11 Am. Juris. 258.

A study of our cases, and also those from other jurisdictions, fails to disclose any definition, or any statement listing all of the essential ingredients of a family settlement. Notwithstanding such absence, there are, however, some matters that are clear; and these are sufficient for a decision in the case at bar:

1. It is not necessary that there be a previous dispute or controversy between the members of the family before a valid family settlement may be made. Thus,

in *Martin* v. *Martin, supra,* there was no dispute at the time of the conveyance or will in question, yet the agreement was called a "family settlement"; and Mr. Justice FRAUENTHAL, speaking for the court, used this language:

"This was in effect a family settlement of the interests of these members of the family in these two remaining tracts of land which came from these two estates of the family. Courts of equity have uniformly upheld and sustained family arrangements in reference to property where no fraud or imposition was practiced. The motive in such cases is to preserve the peace and harmony of families. The consideration of the transaction and the strict legal rights of the parties are not closely scrutinized in such settlements, but equity is anxious to encourage and enforce them. As is said in the case of *Pate* v. *Johnson,* 15 Ark. 275: 'Amicable and family settlements are to be encouraged, and when fairly made . . . strong reasons must exist to warrant interference on the part of a court of equity.' *Turner* v. *Davis,* 41 Ark. 270; *Mooney* v. *Rowland,* 64 Ark. 19, 40 S. W. 259; *LaCotts* v. *Quertermous,* 84 Ark. 610, 107 S. W. 167; *Smith* v. *Smith,* 36 Ga. 184, 91 Am. Dec. 761; *Smith* v. *Tanner,* 32 S. C. 259, 10 S. E. 1058; *Good Fellows* v. *Campbell,* 17 R. I. 402, 22 Atl. 307, 13 L. R. A. 601."

The case last cited in the above quotation is that of *Good Fellows* v. *Campbell,* 17 R. I. 403, 13 L. R. A. 601, wherein there had been no previous dispute, yet a family settlement was upheld; and the opinion contains this pertinent language:

"But there is a class of cases of family arrangements, relating to the settlement of property, in which there is no question of doubtful or disputed rights, and in regard to which a peculiar equity has been administered, in that they have been supported upon grounds which would hardly have been regarded as sufficient if the transaction had occurred between strangers. In these cases the motive of the arrangements was to preserve the honor or peace of families or the family property. When such a motive has appeared, the courts have not closely scrutinized the consideration. *Trigg* v. *Read,* 5

Humph. 529, 546, 42 Am. Dec. 447; Burkholder's App., 105 Pa. 31; Wilen's App., *Id.* 121; *Walworth* v. *Abel,* 52 Pa. 370; *Farnsworth* v. *Dinsmore,* 2 Swan. 38; *Williams* v. *Williams,* L. R. 2 Ch. App. 294, 304; *Houghton* v. *Houghton,* 15 Beav. 278; *Wycherley* v. *Wycherley,* 2 Eden 175; *Frank* v. *Frank,* 1. Ch. Cas. 84; *Stapilton* v. *Stapilton,* 1 Atk. 2; *Pullen* v. *Ready,* 2 Atk. 587; *Cory* v. *Cory,* 1 Ves. Sr. 19; *Head* v. *Goodlee,* Johns. V. C. 536, 569.

"In the case at bar the motive for the agreement was, as we have seen, to provide, among other things, for the amicable distribution among the respondents of the surplus of his estate, including the moneys payable on the benefit certificates, after the payment of debts, etc. This motive constituted a sufficient consideration within the law relating to family arrangements, and the agreement is therefore sustainable as a family arrangement."

Furthermore, in Bouvier's Law Dictionary (Rawles 3rd Ed., Vol. II, p. 1188) under the title of "Family Arrangement," this appears: "Such an arrangement may be upheld, although there were no rights in dispute at the time of making it, and the court will not be disposed to scan with much nicety the *quantum* of the consideration; . . . "

So we hold that there need be no pre-existing dispute in order to have a valid family settlement.

(2) Likewise, it is not essential that the strict mutuality of obligation or the strict legal sufficiency of consideration—as required in ordinary contracts—be present in family settlements. It is sufficient that the members of the family want to settle the estate: one person may receive more or less than the law allows; one person may surrender property and receive no *quid pro quo.*[2] Thus, in *Turner* v. *Davis,* 41 Ark. 270, there was claimed that one—Watkins—had no interest in the property sufficient to support a family settlement; but in disposing of that contention, Mr. Justice EAKIN said: "We cannot go behind the agreement to ascertain the interest of Wat-

[2] See 251 C. J. 124 and Bouvier's Law Dictionary (Rawles 3rd ed., vol. II, p. 2785) for discussion of *quid pro quo.*

kins. It is a matter of no consequence whether he had courtesy or had nothing. . . . The agreement stands on the ground of family settlements, . . . They are supposed to be the result of mutual good will; and imply a disposition to concession for the purpose, regardless of strict legal rights; always excepting cases of fraud, of which nothing, in this case, appears.''

Again, in *Sursa* v. *Wynn,* 137 Ark. 117, 207 S. W. 209, the widow agreed with her two sons that a certain item—inheritance tax—would be paid equally by the three of them. Later the widow contended that she was not legally liable for any of the tax, and desired to repudiate the alleged agreement. In disposing of that contention, Mr. Justice HART said: '' . . . they agreed that in the settlement of the estate they would share equally in paying the inheritance tax. . . . This they had a right to do and the agreement made by them was a valid and binding agreement.''

In 11 Am. Juris. 258, in speaking of family settlements, this is stated: '' . . . it being a general principle that a voluntary conveyance, made with a view to a family settlement, is such a conveyance as the law will effectuate.''

It is true that in some of our cases (a recent such case is *Mills* v. *Alexander,* 206 Ark. 754, 177 S. W. 2d 406), we have mentioned the ''consideration'' or benefit received by the person who later sought to question the family settlement; but in each such case the consideration was discussed to demonstrate that there had been no fraud, imposition or overreaching practiced against the complaining party. In the case at bar there is no claim that there has been any such fraud, imposition or overreaching, so the matter of consideration becomes of no consequence in the family settlement here involved. But even if there should be some idea of consideration in a family settlement, then it is found, in the evidence here, in the fact that Mrs. Anna Mae Pfaff agreed to guarantee all of the funeral expenses of Terrence Pfaff, in return for which appellees signed the instrument here attacked. Appellees say that they gained nothing by this

guarantee by Mrs. Pfaff. That may be true; but the parties traded on the basis of such a promise; and what was said in the Rhode Island case of *Good Fellows* v. *Campbell, supra,* applies here: "This motive constituted a sufficient consideration within the law relating to family arrangements, and the agreement is therefore sustainable as a family arrangement."

Likewise, in Bouvier's Law Dictionary (Rawles 3rd Ed., Vol. II, p. 1188) this appears: "In these cases, frequently, the mere relation of the parties will give effect to bargains otherwise without adequate consideration. 1 Chitty Pr. 67; 1 Turn. & R. 13; *Boyd* v. *Robinson,* 93 Tenn. 1, 23 S. W. 72; *De Hatre* v. *De Hatre,* 50 Mo. App. 1."

Without extending this opinion by further discussion of family settlements, it is sufficient to announce our conclusion: that Mrs. Petre and Mrs. Clements are bound by the family settlement with Mrs. Pfaff, and the chancery court erred in failing to so hold. The decree of the lower court is therefore reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.

ROBINS, J., disqualified and not participating.