Moody *v.* Moody.

4-9501                                              240 S. W. 2d 22

Opinion delivered May 28, 1951.

Rehearing denied July 2, 1951.

*Frank C. Douglas,* for appellant.

*James M. Gardner,* for appellee.

HOLT, J. Appellants and appellee, Allen C. Moody, are the heirs at law of A. J. and L. C. Moody. Mr. Moody died February 19, 1930, and his wife died about two years later.

A. J. Moody and his wife were divorced September 25, 1925, and a property settlement made under the terms of which Mr. Moody's land was divided into two tracts (referred to as the north tract and the south tract), the south tract containing approximately 31.27 acres was to be the property of Mrs. Moody and the north tract the property of Mr. Moody.

April 15, 1926, A. J. Moody deeded to his son, Allen, both of these tracts, described as follows: "The west part of the north west one fourth of section eight (8) of township 15 north, range eleven (11) east, lying in the county of Mississippi, Chickasawba District, State of Arkansas, (approximately 59.75 acres). In consideration of the sum of $2,000—Two Thousand—by A. C. Moody, for one thousand ($1,000) dollars of which he is to board and bed me for the remainder of my natural life and for $1,000 he is to divide the * * * land equally between my five heirs namely, Lou Hendricks, Myrtle Crawford, Hubert Moody, Jodie Butler, and A. C. Moody."

In August, 1930, two grandchildren of Mr. and Mrs. Moody sued (this suit was case No. 4800) to set aside the above deed to Allen and to secure a one-sixth share in the property therein described. They were denied the relief prayed. The decree dated March 2, 1933, confirmed title in Allen but subject to a lien in favor of his brother, Hubert, and his three sisters (appellants) in the amount of $1,000. This $1,000 appears never to have been paid by Allen to appellants.

Hubert and the three sisters filed the suit against Allen in February, 1935, (this suit was case No. 5914)

alleging that they had entered into an agreement, in effect, a family settlement with their brother, Allen, whereby it was agreed that Hubert and the three sisters should take the south tract (which was their mother's part) and Allen the north part, in consideration that Allen was to be relieved of paying the $1,000 awarded them. This suit was never tried, but was finally removed from the docket for the reason, say appellants, that all parties had agreed upon a final family settlement as alleged by appellants in this 1935 suit (No. 5914).

The record reflects that under this alleged family settlement in 1935, Hubert and his three sisters made a temporary division of the south tract into eight acre tracts (approximately) and have had possession and farmed or rented these tracts since, a period of more than fifteen years, without objection on the part of Allen (appellee).

When one of the sisters, Mrs. Jodie Kenney, died in September, 1949, Allen took possession of her tract, claiming, for the first time, that she only had a life estate and also informed Hubert and the other two sisters that they too only held a life estate in the tracts they were occupying and that he owned the property. It was at this juncture that the present suit was filed, May 5, 1950, in which appellants sought to enforce specific performance of the alleged family settlement, and to have their title to the south tract (their mother's part) quieted in them as tenants in common, free of all claims of their brother, Allen. They alleged in their complaint, *inter alia,*—that "the date of the family settlement agreement is stated in the complaint, being some time in 1933, after the decree in Chancery in the suit of Lyman Moody and Virgie Moody Medlin, and the death of Mrs. L. C. Moody in the same year; it being understood between Allen C. Moody and his brother and three sisters that the entire tract would be divided into five equal parts as the deed provided for from A. J. Moody to Allen C. Moody; but when the court construed the deed to mean that Allen C. Moody should pay $1,000 to his brother and three sisters, then the family agreement started, and this argu-

ment finally terminated in Allen C. Moody taking the north part of the land and giving the south part to his brother and three sisters, this giving them about half what they were entitled to and expected.''

Appellee denied all material allegations and pleaded the statutes of frauds and limitations, and also pleaded *res judicata*.

Taking of proof by appellants on depositions was begun August 25, 1950, and appellants' testimony completed prior to November 16, 1950. On the latter date, appellee (defendant below) recalled Hubert Moody ''for further cross-examination on behalf of the defendant'' and introduced in evidence appellants' complaint, and the depositions of Hubert Moody and Jodie Butler (containing about twenty-two pages) in case No. 5914, above. On December 14, 1950, Hubert was again recalled (for a third cross-examination) by appellee (defendant) and in open court was further questioned and over the objections of appellants introduced in evidence the original complaint, answer, amended answer, and decree in case No. 4800, above. On the preceding day, December 13, 1950, appellee, under the authority of Act 470 of 1939 (Ark. Stats. 1947, § 27-1729 as amended) had filed motion to dismiss appellants' complaint on the ground that appellants' evidence was not sufficient to grant the relief for which they prayed. The trial court sustained appellee's motion, dismissed appellants' complaint and this appeal followed.

The court erred in dismissing appellants' complaint in the circumstances.

Act 470 contemplates that the written motion to dismiss may be filed only after the plaintiff has rested or closed his testimony and before the defendant has offered any affirmative testimony in defense.

Here, the record reflects that after appellants rested and both before and after the motion to dismiss was filed, December 13, 1950, under the guise of cross-examination, and after, in effect, having made Hubert his own witness, appellee (defendant) introduced evidence which

tended to contradict appellants' contention that a family settlement had been made.

Allen had pleaded *res judicata*. The pleadings he introduced from former cases were not cross-examination, but were in support of his plea of *res judicata* for the sustaining of which he had the burden.

After a review of all the evidence, which we do not detail, we have concluded that the preponderance thereof is against the Chancellor's findings, but that the preponderance supports appellants' contention that the parties here made a binding oral family settlement. All of the appellants so testified and Judge C. M. Buck, who represented Allen in suit No. 5914, testified: "Sometime after the depositions of some two or three witnesses had been taken by the plaintiffs, I interviewed the attorneys representing the plaintiffs and asked when they would conclude their testimony. I was informed, either by the attorney representing the plaintiffs or by Allen C. Moody himself, that the parties had compromised and settled the litigation. Some months later, the suit was dropped from the docket and I assumed that it had been compromised and settled." Attorney, Mr. Claude Cooper, tended to corroborate Judge Buck.

Appellants further testified that when their father died, it was understood and agreed that appellants and appellee were to share his land in accordance with the intention which he had expressed in his deed (above) to Allen, but that a final agreement and settlement was made when case No. 5914 was abandoned on appellee's agreeing that for, and in consideration of, the thousand dollars that appellee owed appellants, they should have their mother's share, or the south part of their father's land, and appellee would retain the north part.

The principles of law announced in *Hollowoa* v. *Buck,* 174 Ark. 497, 296 S. W. 74, apply and control here. We there said: "Then, again, this was a family settlement of property rights, fairly made, and will not be set aside except for very strong and cogent reasons; neither will the consideration for the settlement nor the prior

legal rights of the parties be minutely inquired into. As was said in *Pate* v. *Johnson,* 15 Ark. 275: 'Amicable and family settlements are to be encouraged, and, when fairly made, . . . strong reasons must exist to warrant interference on the part of a court of equity.'

"The above was quoted in *Martin* v. *Martin,* 98 Ark. 93, 104, 135 S. W. 345, 353, where it was said: 'This was, in effect, a family settlement of the interests of these members of the family in these two remaining tracts of land which came from these two estates of the family. Courts of equity have uniformly upheld and sustained family arrangements in reference to property where no fraud or imposition was practiced. The motives in such cases is to preserve the peace and harmony of families. The consideration of the transaction and the strict legal rights of the parties are not closely scrutinized in such settlements, but equity is anxious to encourage and enforce them.' (Citing cases)."

On the evidence here, appellants took possession under the oral family settlement agreement, and exercised full ownership with appellee's knowledge and consent, and this takes the agreement out of the statute of frauds. We further said in *Hollowoa* v. *Buck*:

"The only other question of sufficient importance to consider here is, was it necessary, under the facts in this case, for the settlement or agreement to be in writing, since it involved the conveyance of real estate? This question must also be decided against appellant. The undisputed proof shows that at least two of the appellees actually entered into possession of their tracts, fenced them, pastured them, and exercised other acts of ownership over them with appellant's full knowledge and consent. They were therefore in the same attitude as a vendee who has been put in possession by the vendor under a parol contract to purchase, which takes the contract out of the statute of frauds, and, if taken out as to one, it is out as to all."

The decree is reversed and the cause remanded with directions to quiet appellants' title as prayed and for any further proceedings consistent with this opinion.