HOBBS *v.* COBB.

5-2199                                    339 S. W. 2d 318

Opinion delivered October 24, 1960.

595

B. *W. Thomas* and *Robert D. Ridgeway*, for appellant.

*C. A. Stanfield*, for appellee.

CARLETON HARRIS, Chief Justice. Jennie Sherman, a resident of Hot Springs, executed her last will and testament on December 4, 1953, and died the following July at Miami Beach, Florida. The will was admitted to probate by the Garland Probate Court July 14, 1954, and letters testamentary were issued to the appellant executor, Richard W. Hobbs. The deceased was survived by her husband, Samuel Sherman, a son, Nathan Sherman, and a daughter, Edna Karp Cobb, also called "Ginger"; two sisters, Becky Hunt and Mildred Shapiro, and two granddaughters, Joyce Karp and Ellen Sherman.

A short time prior to her death, Mrs. Sherman purchased a hotel in Hot Springs, and this hotel, known as the Sherman Hotel, was devised to her trustee, Richard W. Hobbs, in trust, granting the power to retain this hotel, or to sell, lease, mortgage, or dispose of the property or any part thereof, and to re-invest in securities or other properties which the trustee might deem advisable. However, the instrument provided that in the event of the sale of the hotel, the trustee should pay to the testatrix' son and daughter the sum of $55,000, each to share equally, the payment to the son to be made in a lump sum, and the daughter, appellee herein, to be paid at the rate of $300 per month until she should reach the age of 35 years, at which time the balance of her share would be paid to her in a lump sum. Item 7 then directs the trustee to distribute the remainder of the balance of the

purchase price over and above the sum of $55,000 as follows:

"$1,000.00 to be given and paid unto my sister, Becky Hunt; $1,000.00 to be given and paid unto my sister, Mildred Shapiro; $200.00 unto the Hadassah Medical Organization of Hot Springs, Arkansas; $300.00 to the Jewish Temple of which I may be a member at the time of my death."

Item 8 then provides that after payment of the aforementioned bequests, the remaining balance shall be disposed of by paying one-half to her husband, and one-half to her grandchildren, Joyce Karp and Ellen Sherman.

On July 17, 1956, Mrs. Cobb (then Karp) filed a petition asking the court to construe the will, and alleging the invalidity of the provisions vesting title to the hotel property in Hobbs, as trustee; the invalidity of the section conferring upon the trustee the right to retain, sell, lease or mortgage the property, and asserting the provisions to be contrary to public policy and the law against perpetuities. In August, the executor filed a petition requesting authority to sell the hotel, and also setting forth that the best interests of the estate would be served by compromising and settling certain lawsuits filed against the estate by Samuel Sherman in Florida, and suits filed by the estate against Sherman. The order sought was granted by the court, and the executor was directed to sell the hotel for $85,000; from such amount, Samuel Sherman was to be paid $17,300 in full settlement of his claims, the balance of the money to be held subject to the orders of the court. On November 7, 1956, the court passed upon the petition filed by Mrs. Karp in July, and entered its order finding that the provisions of the trust relative to appellee were null and void, and that she should share under the proceeds of the estate in the same manner as her brother; the executor was directed to pay to appellee her share of the estate. Subsequent thereto, the executor filed his petition for partial distribution of the estate, and for the payment of executor's and attorneys' fees, and on November 14th,

the court entered its order directing the payment of these fees, and ordered the balance of the monies in said estate, less $1,000 (for possible expenses), to be paid to Nathan Sherman and Mrs. Karp. On March 25, 1957, the executor filed a written motion, setting up that the petition for partial distribution was in error, and that the order entered thereon should be amended *nunc pro tunc* to show, *inter alia,* that the parties had agreed that it was their intent to pay the special bequests, heretofore set out in paragraph two of this opinion. The executor further stated that Mrs. Karp had been overpaid in the amount of $533.33,[1] and that this amount was due to the estate from Mrs. Karp. In compliance with the petition, the court entered its order finding that the order entered November 14th should be amended to provide, *inter alia,* for the payment of the items reflected in the petition, and on June 24th, an order was entered directing Mrs. Karp to refund the sum of $500[2] to the estate, finding ''that there are not sufficient funds or assets in the hands of the executor to pay the debts of the estate and the special bequests mentioned therein.''

On July 11th, the executor filed his accounting with the court, and on July 15th, appellee and Nathan Sherman, through their attorneys, P. E. Dobbs and Michael B. Heindl, filed a second petition to construe Mrs. Sherman's will, alleging that the accounting filed by the executor provided for the payment of the special bequests, and that they (petitioners) were entitled to all of the proceeds remaining in the hands of said executor which had been derived from the sale of the hotel, in that the petitioners had not received a sum equal to $55,000. The executor filed his response to this petition, asserting that petitioners had previously asked for a construction of the will, ''were bound to raise all questions pertaining to the construction of the will at that time, and therefore are estopped to raise further issues as to the construction of said will''; that partial distribution of the

---

[1] Nathan Sherman had been paid $15,068.18, and appellee had been paid $16,601.51.

[2] Why the order was entered for $500 instead of $533.33 is not explained in the record.

estate had already been made, such distribution being based on a settlement between petitioners and Samuel Sherman, the settlement also including the provision that the special bequests in the amount of $2,500 would be paid to the several legatees. The latter, through their attorney, also filed a response to the petition, setting up that they had approved the compromise settlement, and "that said heirs are estopped to raise any question relative to the special bequests by reason of the afore-mentioned settlement." Mrs. Karp, on November 10, 1958, then filed a motion asking that the order requiring her to refund $500 be set aside. Following a hearing, and the taking of testimony, the court, on February 1, 1960,[3] entered its order quashing the prior order wherein appellee was ordered to repay $500, and further finding "that the petition to construe the will as providing that the contingent beneficiaries mentioned in paragraph seven take nothing thereunder until after petitioners are paid the sum of $55,000, should be granted." From this order, the executor brings this appeal.

While the recitation of pertinent facts is rather lengthy, the litigation can really be disposed of through determination of one issue, *viz.*, have the provisions of the will been superseded by what is commonly known as a family settlement? Family settlements are recognized and enforced in Arkansas. See *Sursa* v. *Wynn,* 137 Ark. 117, 207 S. W. 209; *Pfaff, Administratrix* v. *Clements,* 213 Ark. 852, 213 S. W. 2d 356 (1948). The executor, Hobbs, testified that all the parties agreed to the payment of the special bequests, and that this agreement was reached on the basis of a compromise between the children and husband of the deceased; that appellee and her brother were not on good terms, and that Samuel Sherman, the surviving spouse, and step-father of Edna and Nathan, "was fighting both of the children." Hobbs stated that the two children desired the bequests

---

[3] The record does not reflect the reason for the 16 months lapse from the time of the filing of the second petition to construe the will, and the filing of the motion by appellee to quash the order requiring her to refund $500; nor is there any explanation for the 15 months lapse between the time of the filing of this motion and the time of hearing.

paid, since close relatives were the recipients, and likewise agreed to the payment of the bequests to the Jewish Medical Association and Temple since such bequests were in small amounts. According to his testimony, the payment of the special bequests was approved by both appellee and her attorney, Mr. Heindl. Robert Ridgeway and B. W. Thomas, attorneys for the estate, likewise testified that the agreement was reached. The only testimony offered on the part of appellee was by Mr. Heindl. He testified that he made no agreement with respect to the contingent beneficiaries being paid, nor did he definitely understand that they were to be paid. Mr. Heindl did agree that, through error, appellee had been overpaid to the extent of $500. Appellant offered in evidence copies of two letters, one dated September 19, 1956, and the other, March 21, 1957. The former letter was directed to Mr. Heindl by Mr. Hobbs, and set out, first, that the hotel could be sold for $85,000 cash; thereafter, listing the charges against this amount, including the figure for special bequests,[4] and finally, stating the balance to be divided between appellee and her brother. The latter letter, directed to Mr. Heindl and Mr. Dobbs, stated:

"I am enclosing herewith a copy of a Motion to Amend Order for Partial Distribution in the above styled cause which we will ask an order to be entered on Monday, March 25, 1957, at 10:00 A.M. I am also enclosing herein a copy of the Order which the Court will be asked to enter and in the event either of you, as attorneys for Ginger Sherman and Nat Sherman, have any objections to the motion and order, Mr. Thomas and I request that they be raised at that time."

Mr. Heindl stated that he presumed he received both of these letters. He admitted that he made no objection to the suggested order, stating: "I never saw any necessity for it, if I was satisfied there was a clear understanding between all of the lawyers involved that the

[4] The bequests, as mentioned in the will and which are involved in this litigation, totaled $2,500, but the various motions, petitions, and accounting sometimes use the figure $2,500, and at other times, the figure $2,300.

special bequests would lay dormant until such time involving the two children and the father were taken care of, and this took care of the two children and the father."

The testimony aside, we think the agreement was clearly established. The record reflects that the amount which Samuel Sherman was to receive under the agreement, $17,300, was paid to him on November 15, 1956, and Mr. Sherman had executed a Renunciation on September 13th, renouncing all rights under the will.[5] It will be recalled that, since the property was sold, Mr. Sherman, under the terms of the will, "came behind" the legatees who were to receive the $2,500, *i.e.*, he was to receive nothing under the instrument until these bequests had been paid. It is therefore apparent that the provisions of the will were disregarded, and the money distributed in accordance with some agreement. It is also obvious that Samuel Sherman could not have been paid, as herein stated, except with the approval of the legatees of the smaller bequests.

It is true that the amount received by Mrs. Karp and her brother was considerably less than $55,000, and it is likewise true that the other bequests were not to be paid under the terms of the will until Mrs. Sherman's children

---

[5] According to the record, Mr. Sherman held legal title to an undivided one-half interest in the hotel property. However, as shown by the testimony, he did not pay any of the purchase price for the hotel, and had executed a promissory note in the amount of $55,000, payable to his wife, together with a mortgage covering his interest in the property. Following the filing of a petition by the executor, the court found that Sherman was in default on the note and mortgage in the sum of $55,000; also, that other sums were due and payable to the estate by Sherman, and authorized the executor to institute suit. Sherman's possible interest, under the deed, is immaterial in this litigation, for the record reflects that the payment of $17,300 was at least partly in settlement of his claims under the will. In the instrument of Renunciation, Sherman states that for and in consideration of the sum of $17,300, he does "finally renounce and reject for myself and my heirs, legatees, devisees and legal representatives any and all bequests, gifts and share in the Estate of my wife, Jennie Sherman, Deceased, which I might have under the last will and testament of my said wife, Jennie Sherman, Deceased, who died on or about the 3rd day of July, * * * And I further renounce and reject any and all provisions for my benefit under said last will and testament above mentioned and referred to, with any and all interest in the Estate of my deceased wife under said will, and in the Estate of my said wife however such interest may arise, and I refuse to accept any and all provisions of said will."

had received that amount. It cannot, however, be successfully argued that the beneficiaries of the lesser amounts, incurred no detriment under the compromise, because they would not have taken anything under the will itself, and therefore suffered no loss. In *Pfaff, Administratrix* v. *Clements, supra,* it is stated:

"Likewise, it is not essential that the strict mutuality of obligation or the strict legal sufficiency of consideration — as required in ordinary contracts — be present in family settlements. It is sufficient that the members of the family want to settle the estate: one person may receive more or less than the law allows; one person may surrender property and receive no *quid pro quo*. Thus, in *Turner* v. *Davis,* 41 Ark. 270, there was claimed that one — Watkins — had no interest in the property sufficient to support a family settlement; but in disposing of that contention, Mr. Justice Eakin said: 'We cannot go behind the agreement to ascertain the interest of Watkins. It is a matter of no consequence whether he had curtesy or had nothing . . . The agreement stands on the ground of family settlements . . . They are supposed to be the result of mutual good will, and imply a disposition to concession for the purpose, regardless of strict legal rights; always excepting cases of fraud, of which nothing, in this case, appears.' "

While the persons directly affected by the court's order, which occasions this appeal, are those who were recipients of the bequests, the executor was a proper party to act in behalf of these beneficiaries. As stated in Corpus Juris Secundum, Vol. 33, § 142, p. 1099:

"An executor or an administrator acts in a representative capacity, representing and acting for all parties and all interests in the estate. It is said that he occupies a double role, being not only the personal representative of decedent, but also, to a very great extent, the representative of the creditors, and of the heirs, legatees, or distributees."

Mr. Hobbs was under a $10,000 bond. Certainly, with particular regard to the fact that Samuel Sherman, who, under the terms of the will, was to receive nothing from the proceeds of the sale until after the payment of these legacies, the executor acted circumspectly and properly in seeking to carry out the provisions of the agreement.

The order of the court of February 1, 1960, wherein that court quashed the prior order directing appellee to refund $500 to the estate, and further holding that the "contingent" beneficiaries take nothing until "petitioners are paid the sum of $55,000", is hereby reversed, annulled, and set aside, and the cause is remanded to the Garland Probate Court with directions to reinstate the order of June 24th, 1957 (wherein appellee was directed to refund the amount of $500), and to authorize the executor to pay the bequests to the "contingent" beneficiaries heretofore mentioned.

Costs of this appeal are to be borne by appellee.