In the Matter of the Estate of
Lula S. TORIAN, Deceased and the
FIRST NATIONAL BANK OF
MEMPHIS, Memphis, Tennessee *v.*
Louise Crum SMITH et al

77-283                                    564 S.W. 2d 521

Opinion delivered April 24, 1978
(Division II)

306

*Heiskell, Donelson, Adams, Williams & Kirsch,* Memphis, Tenn., and *Jake Brick,* for appellants.

*Burch, Porter & Johnson,* Memphis, Tenn., and *Rieves, Rieves & Shelton,* for appellees.

FRANK HOLT, Justice. This appeal results from a conflict of laws with respect to the apportionment and payment of estate taxes. The decedent, Lula S. Torian, age 81, died testate on October 24, 1972, while a resident and domiciled in Arkansas. She was survived by her husband, H. D. Torian. Her will, executed in Mississippi, nominated the appellant, First National Bank of Memphis, to be executor of her estate. The will made no provision as to how the inheritance taxes were to be paid by her estate. The named executor filed a petition in a Mississippi State court on November 3, 1972, to probate the original will and codicils there. The petition alleged that, although the testatrix was a citizen and resident of Crittenden County, Arkansas, she owned no real property in Arkansas and, because she owned approximately 900 acres of land (later valued at $1,000 per acre for tax purposes) in DeSoto County, Mississippi, probate of the will there was necessary and desirable. The petition was granted on the date it was filed and the appellant bank appointed executor. On December 7, 1972, the executor bank filed an inventory of the estate, listing personal property in Mississippi valued at $1,000. It appears the real and personal property located in Mississippi consisted of approximately 59% of the total estate.

On January 23, 1973, the executor filed a petition, which was approved that date, to probate the will in Crittenden

County, Arkansas. Attached to the petition was an authenticated copy of her will and codicils together with the Mississippi order admitting the will to probate there. It was requested that the assets of the estate in Mississippi be administered according to the laws in Mississippi and the personal property in Arkansas, valued at approximately $486,-000, be administered according to the laws of Arkansas. Letters testamentary were issued to appellant First National appointing it executor of decedent's Arkansas estate which was found to consist of personal property valued as stated. The Arkansas probate court further found that it was necessary to probate the will in Arkansas and Mississippi to fully administer the estate and make a proper distribution of the property. The order stated that the assets in Arkansas would be administered according to Arkansas law and those in Mississippi under its law. It appears that the assets in Arkansas comprised approximately 41% of the total estate.

On May 9, 1973, appellant First National filed a petition with the Arkansas court requesting postponement of the filing of an inventory since a question had arisen as to the proper forum for original jurisdiction to probate the will. The court postponed the filing of an inventory until this determination was made. On July 26, 1973, appellant First National, upon the advice of its Mississippi counsel, filed a petition with the Mississippi court for permission to withdraw the original will and transfer it to Arkansas. The petition recited that the decedent owned about 920 acres in DeSoto County, Mississippi, and a residence in West Memphis, Arkansas, with her husband as tenants by the entirety; that an authenticated copy of the will, previously admitted to probate in Mississippi, was afterwards probated in the probate court of Crittenden County, Arkansas; and that the appellant is advised there is some question about the validity of a probate of a will of an Arkansas resident by an authenticated copy rather than by the original. Further, a transfer of the original will was requested for the reason that the decedent's will and codicils recite that she was a resident of Arkansas at the time of her demise in Arkansas, and she was married to an Arkansas resident and resided with him on property jointly owned by them in Arkansas. The several specific or residuary legatees (Tennessee residents except one), the appellees here, and the specific devisees of the 920

acres in Mississippi (Mississippi residents) were made respondents. The executor requested that process issue requiring respondents to show cause why the original will should not be withdrawn from the Mississippi court for the purpose of filing it in the pending proceeding in the Arkansas probate court. The residuary legatees answered and joined in the executor's petition. The specific devisees of the Mississippi lands answered controverting the petition to withdraw the original will.

By cross-bill against the executor, the specific devisees of the 920 acres sought an accounting and the payment of the federal estate taxes by allocating the burden of the taxes pursuant to the laws of Mississippi. The appellant executor, the only named party in the cross-bill, answered admitting federal estate taxes would be owed; also there was a controversy over which state law applied to determine proration of the estate tax liability; and since the decedent was an Arkansas resident, the Arkansas court should first determine the estate tax liability of the respective parties.

The Mississippi court denied the petition to withdraw and transfer the original will for filing in Arkansas. Further, it determined that the decedent's will, pursuant to Mississippi law, should be construed to require the payment of all estate taxes and other liabilities and expenses from the residuary estate. The residuary legatees (the appellees here), feeling aggrieved by the decree, appealed the decision to the Mississippi Supreme Court asserting that although the Mississippi court had jurisdiction to probate the will, it should have deferred jurisdiction to the Arkansas court, as a matter of comity, on the issue of who should bear the tax burden or should have applied Arkansas law. Under Ark. Stat. Ann. § 63-150 (Repl. 1971), the tax liability would be apportioned equally among all beneficiaries of the estate. On November 3, 1975, the Mississippi Supreme Court affirmed, in *Estate of Torian* v. *First National Bank of Memphis*, 321 So. 2d 287 (1975), the lower court's finding that it is not required by comity to defer to the Arkansas court or apply the Arkansas apportionment statute on the issue of who bore the tax liability because the forum state (Mississippi) and not the domiciliary state (Arkansas) had the greater substantial interest in the controversy under the "dominant interest" and

"interest analysis approach." Also the will was not probated in Mississippi by mistake nor compulsion. Therefore, the residuary legatees must bear the burden of all estate taxes and expenses.

Thereafter, in April, 1976, the residuary legatees, appellees here, filed a petition in the pending proceeding, which had been held in abeyance, in the Arkansas probate court requesting an order directing the appellant executor to file its inventory and final accounting in the Arkansas court. The executor filed its accounting which indicated that the Arkansas administration had approximately $496,626.29 at its inception consisting of cash, bonds, securities, etc. Credits were claimed against those assets of the estate in Crittenden County, Arkansas, from the amounts that the executor had paid for federal, Mississippi and Arkansas estate taxes following the decision of the Mississippi Supreme Court. Appellees objected to the accounting asserting that they, as residuary legatees, had been wrongfully charged in the sum of approximately $228,000; i.e., the executor had not apportioned the taxes pursuant to Arkansas law. Appellant executor asserted that since the residuary beneficiaries, appellees, were parties to the Mississippi proceedings or the appeal there, that the Mississippi Supreme Court decision was entitled to full faith and credit, and the question of the propriety of the expenditures for taxes was *res judicata* in the case.

The Arkansas probate court held that appellant First National, in its capacity as executor of the deceased's Arkansas estate, was not a party to the Mississippi proceeding and, therefore, neither the executor nor the Arkansas estate was subject to the decision rendered in Mississippi. The court commented that the record of the Mississippi proceeding did not disclose that the residuary legatees, appellees, were ever served with or waived process on the cross-bill but reasoned this fact was unimportant in that the Mississippi court only had jurisdiction of appellant First National as executor of the Mississippi estate, and the decree was entitled to full faith and credit only as to disposition of the Mississippi estate. Accordingly, the Arkansas probate court denied credits totaling $229,114.34, which were claimed by the executor, for the disbursements it had made, pursuant to Mississippi law, from the Arkansas assets in payment of the entire estate tax liabili-

ty without the Arkansas court's approval. The Arkansas court also ordered the disbursement of the assets of the Arkansas estate to the objecting legatees, appellees, according to the Arkansas apportionment law. The court awarded the executor a fee of $4,000 for its services and its counsel a fee of $5,000.

On appeal here, the appellant executor first contends the court erred in failing to hold the entire decision of the Supreme Court of Mississippi was entitled to full faith and credit and that the doctrine of *res judicata* applied to the issue of the allocation of the estate tax liability. It is well settled that under the full faith and credit clause of the United States Constitution, Art. IV, § 1, a foreign judgment is conclusive on collateral attack, except for the defenses of fraud in the procurement of the judgment or want of jurisdiction in the court rendering it. *Purser* v. *Corpus Christi State National Bank,* 256 Ark. 452, 508 S.W. 2d 549 (1974). Here we are of the view that the Mississippi court decision was not entitled to full faith and credit in its entirety because the court lacked jurisdiction over the Arkansas *res* or that portion of the estate of which Arkansas had acquired jurisdiction.

In *Simmons* v. *Simmons,* 203 Ark. 566, 158 S.W. 2d 42 (1942), we held that "the situs of personal property is the residence of the owner" and the property located in this state is "not subject to the foreign jurisdiction." Further, it is the general rule of law adopted from the common law that the personal estate of a "decedent is a legal unit, having its *situs* at the owner's domicile," and "the title to the whole of it, wherever situated, is vested in the duly qualified domiciliary administrator, and not in the distributees, and that its distribution is governed by the law of the domicile of the deceased owner." *Baker* v. *Baker, Eccles & Company,* 242 U.S. 394 (1917). Here the deceased was a resident and domiciliary of Arkansas. Therefore, the personal property, approximating $500,000 in stocks, bonds, cash, etc., physically located in the appellant bank in Memphis, Tennessee, had its legal situs in Arkansas.

In Leflar, American Conflicts of Law. § 205 (3rd Ed. 1977), it is stated: "Tangible personalty is for the most part

subject to administration at the place of its situs, and nowhere else." Further it is also said:

> Once a chattel is properly subjected to administration in any state, it is technically owned by the administrator there, for purposes of administration . . . . If, however, the chattels have already come under the control of an administrator at their original situs, . . . . the situs administrator's claim to the chattel is superior.

Here it appears that the Mississippi court never attempted to take control over the personal property located in Memphis. The executor filed an inventory and appraisement of the decedent's personal property with the Mississippi court which only listed "furniture and furnishing located in DeSoto County, Mississippi," valued at approximately $1,000. The first court to assert jurisdiction over the personalty in the Tennessee bank was the Arkansas court in its probate order on January 23, 1973. This was proper and in accord with the recited rule of law that the situs of personal property is at the residence or domicile of the owner. Further, *in rem* jurisdiction is founded upon physical power and the "basis of the jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum State." *Hanson* v. *Denckla*, 357 U.S. 235 (1958). Therefore, the Mississippi State court lacked *in rem* jurisdiction over the Arkansas assets of the estate.

Even so, appellant contends by virtue of its personal jurisdiction over the parties, the Mississippi court's judgment is entitled to full faith and credit. Here it is argued that the Mississippi court had personal jurisdiction over the parties, including the appellees who by their appearance and appeal of the Mississippi trial court's decision, submitted themselves to the Mississippi Court's jurisdiction. As appellant argues, the basic question litigated there was what law should apply to determine the allocation of liability from the estate's assets for estate taxes. However, personal jurisdiction over the parties and litigation of this issue does not entitle the Mississippi judgment to full faith and credit in Arkansas as to the Arkansas assets. As was stated in *Carpenter* v. *Strange*, 141 U.S. 87 (1891):

Hence, although in cases of trust, of contract and of fraud, the jurisdiction of a court of chancery may be sustained over the person, notwithstanding lands not within the jurisdiction may be affected by the decree, (*Massie* v. *Watts,* 6 Cranch, 148), yet it does not follow that such a decree is in itself necessarily binding upon the courts of the State where the land is situated. To declare the deed to Mrs. Strange null and void, in virtue alone of the decree in New York, would be to attribute to that decree the force and effect of a judgment *in rem* by a court having no jurisdiction over the *res.*

Here, although personal property is involved rather than real property as in *Carpenter, supra,* the question of power to render a binding judgment over the property is analogous.

Here the Mississipii State court ruled that the will was properly admitted to probate in Mississippi and that its laws would determine who should bear the burden of the estate taxes. The Mississippi Supreme Court affirmed, recognizing the general rule that the final distribution of a decedent's effects is to be decided by the law of his domicile; however, it did not apply in Mississippi because of its statute "declaring that personal property situated in this State shall descend and be distributed according to the laws of this State, notwithstanding the domicile of deceased may have been in another State." Here the personalty involved was not situated in Mississippi. The Mississippi judgment was entitled to full faith and credit in Arkansas as far as it concerned property in Mississippi, but it had no effect *in rem* upon the property legally situated in Arkansas. Accordingly, it was not entitled to full faith and credit nor *res judicata* effect on the issue of allocation of tax liability in regard to the assets of the Arkansas estate.

Appellant contends the court erred in applying the Arkansas estate tax apportionment statute to Mississippi real estate because it was without jurisdiction to do so. Suffice it to say that the Arkansas Probate Court recognized that it had "no control or interest in the Mississippi proceedings." It merely denied the executor the credits sought for the payment of the entire estate tax liabilities out of the Arkansas estate.

Appellant next asserts the court abused its discretion in awarding an unreasonably low fee ($4,000) to it. Appellate review of probate cases is *de novo*, as in equity cases, and on appeal we will consider improperly excluded evidence. *Price* v. *Price*, 258 Ark. 363, 527 S.W. 2d 322 (1975). Therefore, before reaching appellant's contention, we first determine whether the exclusion of an attorney's testimony on the ground of attorney-client privilege was improper.

Here the executor, in its petition for allowance of executor's and attorneys' fees, asserted that the attorney Spears had been employed initially to render services for the Arkansas estate proceedings. The proffered testimony of Spears by appellees related to a consultation which took place a few days before the will was first filed for probate in Mississippi by appellant. According to this attorney, he had advised the appellant that Arkansas and not Mississippi was the proper forum to probate the will. Also, that probating the will in Mississippi would result in exhausting the residuary estates and the devisees of the Mississippi lands would be free of taxes "with a million dollars worth of land."

In *Francis* v. *Turner*, 188 Ark. 158, 67 S.W. 2d 211 (1933), we stated that it was a settled principle "that an attorney for an estate represents the heirs and distributees and legatees" . . . . and is in "a position of trust with respect to all those interested in the estate." An executor or administrator is in a similar position of trust with regard to all those interested in the estate. *Hobbs* v. *Cobb*, 232 Ark. 594, 339 S.W. 2d 318 (1960). Here the appellant executor, in consulting with the attorney Spears, was necessarily acting for both itself as executor and for the beneficiaries under the will.

In regard to the attorney-client privilege, Ark. Stat. Ann. § 28-1001, Rule 502 (d) (Noncum. Supp., 1976), provides:

> (d) Exceptions. There is no privilege under this rule.
> (5) Joint clients. As to a communication relevant to a matter of common interest between or among two [2] or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients. . . .

In a similar situation involving a shareholder's derivative suit against a corporation, the corporation's claim of privilege regarding the advice given it by its attorney was said not to be privileged from disclosure in the action. *Garner* v. *Wolfinbarger*, 430 F. 2d 1093 (5th Cir. 1970). Here the fee sought by the executor was to be paid out of the estate. We are of the opinion the attorney-client privilege was inapplicable and the testimony admissible on the issue of the reasonableness of the executor's fee.

Appellant argues with respect to its executor's fee that, based upon the value of the personal property passing through its hands in the State of Arkansas and the problems involved in administering the estate, it was entitled to a fee of approximately $20,000 pursuant to Ark. Stat. Ann. § 62-2208 (d) (Repl. 1971) rather than the $4,000 allowed. Under § 62-2208 (c), the court, in its discretion, may deny totally or reduce the compensation to a personal representative who has failed to file a satisfactory account or perform any other substantial duty pertaining to its office. Here the administration of the Arkansas estate was first begun in January, 1973, and the matter is still not resolved. It appears that this delay was primarily due to the appellant executor initiating the original probate in Mississippi in disregard of the advice of its Arkansas counsel. This has threatened the assets of the Arkansas estate to near total depletion. Accordingly, we find no abuse of the court's discretionary authority under § 62-2208 (c) in the allowance of only a $4,000 fee.

In regard to the $5,000 attorneys' fee awarded by the court, we cannot agree that the sum awarded was unreasonable or insufficient so as to constitute an abuse of discretion. Appellant sought compensation for its current attorneys in the sum of approximately $17,000 using the statutory standard set out in § 62-2208 (d). However, the court, if it determines the schedule of fees to be excessive under the circumstances, is empowered to allow a fee commensurate with the value of legal services rendered. Appellant argues the fees allowed its current attorneys, Brick and Adams, for services they performed for the executor after April 15, 1976, were inadequate based upon any criteria. Appellees agree that the award was not commensurate with the value of the services rendered. However, they assert, as

the trial court found, the bulk of the services were performed on behalf of the executor in its individual capacity to obtain credits for tax payments made out of the Arkansas assets of the estate. This action was actually in derogation of the interests of the appellees or residuary legatees. In the circumstances, we perceive no abuse of discretion in the award of $5,000 in fees. See *Jacoway* v. *Hall,* 67 Ark. 340, 55 S.W. 12 (1900).

Appellees, by cross-appeal, assert the court erred in failing to charge the executor with the decrease in value of 1,560 shares of stock held during the preceding four year period of the administration of the estate. Appellees argue that the stock had decreased in value in the amount of approximately $35,000 or one-half since the time distribution should have been made and that the delay in distribution is solely attributable to appellant's negligence. The trial court determined the appellees were partially responsible for this decrease in value and denied the requested relief and we agree. The officials of appellant First National had consulted with the appellees, the residuary legatees, concerning this stock. They gave their written authorization to sell one-half of the stock to cover potential federal, Mississippi and Arkansas estate taxes, liabilities and expenses. Also discussions were held as to the necessity of retaining the rest of the stock without making distribution. Additionally, appellant discussed with appellees' attorney the problems of tax allocation and the effect on ultimate distribution. Neither the appellees nor their attorney requested a distribution at any time or any other action regarding the balance of the stock. Certainly, we cannot say that the court's finding that appellees were partially responsible for the stock's decrease in value is against the preponderance of the evidence.

Affirmed on direct.

Affirmed on cross-appeal.

We agree: HARRIS, C.J., and FOGLEMAN and BYRD, JJ.