2011 Ark. 531

Julia Laney **MACHEN**, Appellant

v.

**Billy Randall MACHEN**, Appellee.

No. 11–128.

Supreme Court of Arkansas.

Dec. 15, 2011.

Rehearing Denied Jan. 12, 2012.

Robert Steven Tschiemer and David Preston Price, Mayflower, AR, for appellant.

Stephen R. Crane and Ryan P. Phillips, Magnolia, AR, for appellee.

ROBERT L. BROWN, Justice.

This case comes to us following a grant of a petition to review a court of appeals decision affirming the circuit court's conclusion that appellant Julia Machen entered into a family-settlement agreement with her deceased husband's son, appellee Billy Randall Machen (Randy). *Machen v. Machen,* 2011 Ark. App. 47, 380 S.W.3d 497.

Julia Machen is the widow of the late Billy Ray Machen (Mr. Machen) and the stepmother of Randy. Mr. Machen died on May 20, 2006, and was survived by Julia and two adult sons, Randy and Steven Ray Machen.[1] On July 12, 2006, Julia filed a petition to probate her husband's will, which had been executed on December 20, 1996, and requested that she be appointed executrix for his estate. Contemporaneously with the petition, she filed a copy of Mr. Machen's 1996 will, which bore no

changes or markings. Under the terms of that will, Julia would receive a life estate in Mr. Machen's real property, with the remainder going to Randy. The will also bequeathed $10,000 to Randy and established a testamentary trust for the benefit of Randy's two children in the amount of $20,000. Randy was named the trustee of that trust under the will.

Randy opposed the probate of the 1996 will and the appointment of Julia as the personal representative of his father's estate. On November 13, 2007, he filed a petition in opposition to the probate of the will and asserted that his father had made changes to the 1996 will, thereby revoking it. Randy attached a copy of the same typed 1996 will, but this copy contained several handwritten changes, which he contended were made by his father. On this copy of the will, Randy's bequest was increased to $100,000 and the bequest to the grandchildren, in trust, was increased to $200,000. The front page of the copy contained the signature of Mr. Machen as well as the signatures of Julia Laney Machen and Billy Randall Machen. The date "11–11–05" was written under Randy's signature and under Julia's signature. On May 5, 2008, Julia was appointed executrix of Mr. Machen's estate by court order.[2] Letters testamentary appointing Julia were subsequently filed on September 2, 2009.

On January 5, 2009, Randy filed a complaint in the Circuit Court of Columbia County, Sixth Division, against Julia, in her individual capacity and as personal representative of the Estate of Billy Machen. In his complaint, Randy alleged that on November 11, 2005, Mr. Machen made handwritten changes to his 1996 will. He alleged that Julia had Mr. Machen's

---

1. Steven Machen is not a party to this action.

2. Mr. Machen's will has not been admitted to probate, according to the record filed in this case.

original will, with the revisions, in her possession. Randy further asserted that the handwritten changes constituted an enforceable contract between himself, Mr. Machen, and Julia. He claimed, in addition, that there was a family-settlement agreement and that the will was evidence of that agreement. He requested that the circuit court declare the attached copy of the will bearing the handwritten changes to be an enforceable family-settlement agreement. He also prayed that the circuit court order specific performance of the agreement.

On February 10, 2009, Julia filed an answer to Randy's complaint in which she admitted that an original copy of the 1996 will had not been found. Otherwise, she denied all of Randy's allegations, including his allegation that there was an enforceable family-settlement agreement based on the changes to the 1996 will. She affirmatively pled that Randy had failed to state a cause of action, and, as a consequence, the complaint should be dismissed under Arkansas Rule of Civil Procedure 12(b)(6). She added that the circuit court lacked subject-matter jurisdiction, because there was a pending probate proceeding in Columbia County Circuit Court, Fifth Division.

On May 15, 2009, Randy moved to transfer his contract action to the probate court and to consolidate the Fifth and Sixth Division cases. The circuit court granted Randy's motion to transfer the case to the Fifth Division, and Julia amended her answer to assert that the case should be dismissed for lack of consideration supporting the alleged family-settlement agreement. Julia also moved to dismiss the complaint for the same reason. In her motion, she asserted that in order to have a family settlement there must be an agreement and funding. Because no trust was funded prior to Mr. Machen's death, Julia urged the court to dismiss Randy's complaint. The circuit court held a hearing on the consolidated cases at which Randy and Julia both testified regarding the circumstances surrounding the handwritten changes made to Mr. Machen's 1996 will.

On February 17, 2010, the circuit court entered a Probate Order and Civil Judgment. In its order, the circuit court found that there was no dispute between the parties that the writing on the typed 1996 will was Mr. Machen's. The circuit court further found that Mr. Machen, Julia, and Randy entered into a family-settlement agreement whereby Randy was to receive $100,000 for himself and $200,000 as trustee for his two children. In addition to these findings, the circuit court specifically found that "Julia and Randy simply agreed to distribute the assets of Mr. Machen's estate in a manner different than his original, unaltered will." The circuit court then ordered Julia to pay $200,000 to Randy as trustee for his two children. The probate proceedings regarding the administration of the Estate of Billy Ray Machen were to continue, according to the court, with the exception that the assets of his estate were to be divided in accordance with the family-settlement agreement.

Julia now appeals the circuit court's order and civil judgment. In her appeal, she maintains that the circuit court erred in finding that the changes to Mr. Machen's will constituted a family-settlement agreement because that finding is contrary to the facts. In support of her contention, she advances the arguments that the handwritten changes on the will did not constitute a valid change to the typed will; that the handwriting on the will was disputed; that there were missing or vague terms in the will; that there were no disinterested witness signatures on the will; that the signatures were not at the end of the will;

that there was a disagreement over the new terms in the will; that a replacement will was never executed; and that the changes to the will were not funded before Mr. Machen's death.

■ We review the circuit court's order following the grant of a petition for review as if the matter were initially filed in this court. *See, e.g., Maloy v. Stuttgart Mem'l Hosp.*, 316 Ark. 447, 872 S.W.2d 401 (1994). Moreover, with respect to bench trials, this court has established the following standard of review:

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. Disputed facts and determinations of credibility are within the province of the fact-finder.

*Cochran v. Bentley*, 369 Ark. 159, 165, 251 S.W.3d 253, 259 (2007) (internal citations omitted).

■ Under Arkansas jurisprudence, it is possible to avoid either a will or intestate-succession statutes, if all interested parties consent to a family-settlement agreement. *See Hobbs v. Cobb*, 232 Ark. 594, 598, 339 S.W.2d 318, 321 (1960) (affirming that the provisions of the decedent's will had been superseded by a family-settlement agreement); *see also* Foster, et al., Ark. Probate & Estate Admin. § 18:2. A valid family-settlement agreement can be enforced despite the provisions of a valid will. *Hobbs*, 232 Ark. at 598, 339 S.W.2d at 321.

■ Family-settlement agreements are favorites of the law. *Pfaff v. Clements*, 213 Ark. 852, 855, 213 S.W.2d 356, 358 (1948). Courts of equity have uniformly upheld and sustained family arrangements in reference to property, where no fraud or imposition was practiced. *Martin v. Martin*, 98 Ark. 93, 104, 135 S.W. 348, 353 (1911). The motive in such cases is to preserve the peace and harmony of families. *Id.* It is not necessary that there be a previous dispute or controversy between the members of the family before a valid family settlement may be made. *Pfaff*, 213 Ark. at 855, 213 S.W.2d at 358.

■ Likewise, it is not essential that the strict mutuality of obligation or the strict legal sufficiency of consideration, such as is required in ordinary contracts, be present in family settlements. *Pfaff*, 213 Ark. at 857, 213 S.W.2d at 359. It is sufficient that the members of the family want to settle the estate. *Id.* Furthermore, a party who may not be entitled to any property under either the decedent's will, or at law, may receive property in a family-settlement agreement. *Harris v. Harris*, 236 Ark. 676, 686–87, 370 S.W.2d 121, 127–28 (1963); *Turner v. Davis*, 41 Ark. 270, 275 (1883). A person with no interest in the decedent's property can be a party to a family-settlement agreement. *Harris*, 236 Ark. at 687, 370 S.W.2d at 128. However, a written family-settlement agreement is void and unenforceable, if it is not signed by all interested parties. *Wallace v. King*, 205 Ark. 681, 686, 170 S.W.2d 377, 380–81 (1943) (holding that a written family-settlement agreement was void and unenforceable because it was never executed by all of the legatees, as was intended, and the assent of all of them was essential to validity); *but cf. Moody v. Moody*, 219 Ark. 5, 240 S.W.2d 22 (1951) (holding that the parties entered into a binding oral family-settlement agreement

to convey real estate). Finally, under Arkansas law, family settlements of property rights will not be set aside except for very strong and cogent reasons. *Harris*, 236 Ark. at 688, 370 S.W.2d at 128.

We turn then to the facts of this case. Randy testified at the hearing that on November 11, 2005, he was driving his father to a neurologist in Tyler, Texas. He testified that Julia was present during this trip and was sitting in the backseat. He stated that while he was driving, his father "pulled this will out and said he wanted to go over his will." Randy then identified the marked-up copy of the will to the circuit court and identified the handwriting on the will as his father's handwriting.

Randy next testified that the day after his father's funeral, "me and Julia went over this [the marked up will] and we both signed it at the bottom." He added that there were two signatures on the bottom of the first page of the will, and he identified one as his signature and one as Julia's. Randy also stated that each signature was dated November 11, 2005, which was the date of the trip to Tyler. To explain that discrepancy, Randy said to the court that "the day after his [Mr. Machen's] funeral, we pulled this [the will] out, we went through it and Julia said she wanted dad's will to be carried out the way he made the changes." He further testified that Julia said, "let's sign this and date it as if we signed it that day he made those changes." Randy confirmed that they then signed the marked-up version of the 1996 will.

With respect to the terms of the agreement, Randy testified that Julia and he agreed to dispose of Mr. Machen's property in accordance with the marked-up terms on the will. Under those terms, Randy was to receive $100,000 and $200,000 to be held in trust for Randy's two children, he claimed. Randy also testified that he re-ceived $97,000, "as a result of some action Julia took to disavow some beneficiary funds," sometime after Mr. Machen's death. He confirmed that he had not received the $200,000, which was to be held in trust for his children. He testified that after he and Julia signed the agreement, "she kind of started changing her story on what she wanted to do with the will." He testified that Julia said "that she didn't think the kids should get any money ... then the next morning she said 'never mind. I'm going to go ahead and do exactly what he wanted. We're going to carry forward with it.'" According to Randy, Julia changed her mind again, and because of that, he filed the instant suit to enforce the agreement.

During her testimony, Julia contradicted most of Randy's testimony regarding when the changes to the will were made and when she signed the will. She testified, for example, that Mr. Machen changed his will in their home office before the trip to Tyler, Texas. She added that Mr. Machen told her, "Randy's wanting me to make some changes to the will," and that Mr. Machen stated he thought the $200,000 for the girls was "a little much." She testified that as "time rolled on, he [Mr. Machen] kept saying, he said, 'I'm not going to change that will.'"

Julia then stated that the day before Mr. Machen's trip to Tyler, she signed the will that Mr. Machen had changed. According to her testimony, she did not date her signature. In fact, she testified that the November 11, 2005 date on the will was not in her handwriting. She did confirm that Randy also signed the will the same day she did but, again, protested that it was not signed on November 11, 2005. According to her testimony, she and Randy both signed the will at her home. She signed the will because "it was the day before my husband was to have brain sur-

gery in Tyler. I would have done anything to keep from getting my husband upset."

Julia further testified that there was handwriting on the will prior to her signing it and that the $100,000 bequest to Randy and the $200,000 bequest in trust were included in that handwriting. Moreover, Julia testified that she did disavow $100,000 to give to Randy in accordance with Mr. Machen's handwriting. She testified that she signed the documents so that Randy could get $100,000 on June 29, 2006. Finally, Julia testified that Mr. Machen had not set aside either the $100,000 for Randy or the $200,000 for the grandchildren before his death.

■ It is clear from the above testimony that Randy and Julia diverge on many points, such as when and where they signed the front page of Mr. Machen's will after he made the handwritten changes. Both of them testified, however, that each signed the version of the will containing the changes. In addition, they both testified that the terms of the will had been changed by Mr. Machen prior to their signatures. Julia and Randy also do not disagree about the terms of the agreement between them. Both parties testified that the agreement was for Randy to receive $100,000 and for Randy to serve as trustee of a $200,000 trust for the grandchildren. As a final point, Julia partially performed the agreement by arranging for Randy to receive $97,000 after Mr. Machen's death.

■ These undisputed facts show that the circuit court did not clearly err in finding that Julia and Randy agreed to distribute the assets of Mr. Machen's estate in a manner different from his original, unaltered will. Julia presented no evidence of fraud, duress, or imposition that would render her agreement with Randy unenforceable. *See Martin,* 98 Ark. 93, 135 S.W. 348. Although the cir-

cuit court did not make a finding of fact as to when Julia and Randy signed the agreement, that is not grounds for reversal in this case. First, there is evidence, in the form of Randy's testimony, that the agreement was signed after Mr. Machen's death. Second, a party who may not be entitled to any property under either the decedent's will, or at law, may receive property in a family-settlement agreement. *Harris,* 236 Ark. 676, 686–87, 370 S.W.2d 121, 127–28; *Turner,* 41 Ark. 270, 275. Even if Julia signed the agreement before she had a vested interest in Mr. Machen's estate, it would not merit reversal under these facts.

■ We modify the circuit court's order in one respect. The circuit court found that Mr. Machen, Julia, and Randy had all entered into the family-settlement agreement. It was error, however, for the court to include the decedent, Mr. Machen, as a participant in the agreement, and we modify the court's order to eliminate that finding. Mr. Machen's recourse, should he have wished to change or revoke his will was to do so in accordance with the testamentary formalities, as required by statute. *See* Ark.Code Ann. § 28–25–109 (Repl.2004). Nevertheless, the circuit court found that a valid family-settlement agreement was entered into by Julia and Randy, and it is this part of the circuit court's order that we find not to be clearly erroneous.

Affirm as modified; Court of Appeals opinion vacated.