Cite as 2023 Ark. App. 96

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-500

| | |
|---|---|
| DAVID PRESTON KINARD AND DONNA KINARD; WILLIAM TROY KINARD AND CINDY KINARD; DREW WILLIAM KINARD AND MONICA KINARD; PRESTON COOK KINARD; AND MARY CAMILLE KINARD<br>APPELLANTS | Opinion Delivered February 22, 2023<br><br>APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT [NO. 34CV-20-127] |
| V. | HONORABLE ROB RATTON, JUDGE |
| MICHAEL DAVID KINARD, AS TRUSTEE OF THE WILMA KINARD REVOCABLE TRUST; MICHAEL DAVID KINARD; AND TARA KINARD<br>APPELLEES | |
| | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

This appeal centers on the ownership of approximately 600 acres of farmland. In short, Bill and David Kinard, sons of Wilma Kinard, are displeased with the disposition their mother, Wilma, made of the tracts of land after the 2004 death of their father, Preston Kinard. After Wilma's death in 2020, the bulk of the property became owned or controlled by Wilma's grandson, Mike Kinard, who David's oldest son. Litigation ensued with both sides making various requests for relief, including a declaration of the proper ownership interests of each party. After a bench trial in 2021, the circuit court entered an order finding in pertinent part that (1) appellants had failed to prove the existence of an implied contract

or family-settlement agreement between Preston, Wilma, their children, or their grandchildren pertaining to the transfers of ownership in 2000 of various tracts of land; (2) there was not, nor should there be, a constructive trust placed on the property; and (3) Wilma retained the absolute right to modify her trust and to transfer property out of her trust during her lifetime.[1] On appeal, Bill and David assert that the circuit court's findings are clearly erroneous. We affirm.

Preston and Wilma bought the farm property in the 1960s.[2] In 1984, Preston and Wilma executed a deed to convey the farm property, reserving a life estate for themselves. The 1984 deed gave Mike a one-eighth interest for his life and the remainder to Mike's children; gave David a three-eighths interest for his life and the remainder to his other sons Drew and Preston Cook; and gave Bill a one-half interest for his life and the remainder to his children. In August 1999, Preston gave Bill and David $100,000 each. Bill had requested the money from his father, but David simply received his $100,000 as a gift.

---

[1]The appellants are Wilma's son David and his wife, Donna; Wilma's son, Bill, and his wife, Cindy; David's son, Drew, and his wife, Monica; David's son, Preston Cook; and Bill's daughter, Camille. Bill's other son, Troy, is deceased. The appellees are Mike, as trustee of his grandmother's revocable trust; Mike individually; and Mike's wife, Tara. We will outline the relevant facts and circumstances with specificity where necessary, but for the sake of clarity and brevity, we will address the parties as David and Bill as appellants and Mike as appellee.

[2]The property consists of four tracts of land: Tract 1 contains 440 acres; Tract 2 contains 40 acres, Tract 3 contains 120 acres, and Tract 4 contains 1 acre. This appeal concerns the first three tracts comprising 600 acres. There are no appellate arguments concerning the single acre in Tract 4. We therefore limit our discussion to Tracts 1, 2, and 3 which contain the 600 acres of farmland.

In December 1999, Preston and Wilma, who were then in their seventies, met with an estate-planning attorney at their home to discuss estate plans. The attorney drafted two revocable living trusts, one for Preston and one for Wilma, and each of the trusts recited that their trusts could be amended or revoked at any time by the creator of the trust.

In early 2000, Preston asked the beneficiaries of the 1984 deed to quitclaim their interests in the 600 acres back to Preston and Wilma. The attorney, Preston, Wilma, Bill, and Mike were present at the lawyer's office during the meeting in 2000. The idea was to set up an estate plan that would better avoid estate taxation. Preston said the trusts would be set up in a manner to achieve essentially the same distribution as the 1984 deed. Bill, David, David's two sons, and Mike signed quitclaim deeds, although Bill's two children did not. Preston and Wilma deeded the acreage into Wilma's trust and transferred the shares of the farming operation, Kinard Farms, Inc., into Preston's trust. Preston's trust and Wilma's trust mirrored the distributions provided by the 1984 deed.

David lived out of state and was not ever present when his parents met with the estate-planning attorney. David said his father had called him to tell him about the need to quitclaim his interest back to his parents. David did not know what his mother thought about the estate planning nor did he ever speak with her about it. David abided his father's request and deeded his interest back, as noted above. David understood that the trusts were revocable; he just did not think any changes would be made.

A few days after the trusts were created, Bill called the attorney's office and asked more questions about the implications of the revocable trusts and the quitclaim deed he had

3

signed. Bill wanted to be named a co-trustee, but the attorney informed Bill that his parents did not want him to be a co-trustee. Bill advised his children, who were then minors, not to sign the deeds. Bill did not like that the trusts were revocable and wanted to "derail" his parents' estate plans.

When Wilma was later hospitalized for heart issues, and Bill and his wife, Cindy, went to see her. Bill was frustrated because Wilma had withdrawn a power of attorney that allowed Bill to sign documents regarding the farmland with the county Farm Service Agency. Cindy and Wilma began arguing; Cindy hit Wilma, who was sitting in a wheelchair. This led to Bill and Cindy being banned from the hospital. Wilma was upset about the horrible relationship she had with Bill and his wife.

According to Mike, he had enjoyed a special relationship with his grandparents, Preston and Wilma, all his life. Although he grew up living with his mother (David's ex-wife), he never lived too far away from his grandparents. Mike said his grandparents came to most of his sporting events while they were physically able, and even after he graduated from high school, he kept in touch and visited them often on weekends. Mike lived with his grandparents for a few months in the early 1990s. He worked on the farm some summers. He and his wife helped when his grandparents were hospitalized and helped doing tasks around the house. Mike knew that Wilma's relationship with Bill was very strained and that her relationship with David was also strained.

Preston died in 2004. Wilma, acting as trustee of her husband's trust, abided by the terms of Preston's trust and transferred the corporate shares of the farming operation to Bill

4

(one-half), David (three-eighths), and Mike (one-eighth). Bill's primary occupation had been as a farmer working part of the Kinard family land and some other family members' land. David had lived outside Arkansas since 1970 and worked in other professions. In accordance with Preston's trust, Bill, David, and Mike received annual disbursements from their ownership of shares of the farming operation.

A few months after Preston's death, Wilma had her trust revised to redistribute the farmland in equal thirds to Bill, David, and Mike. Wilma's attorney had her doctor confirm that Wilma was mentally competent and fit to make her own judgments, and the doctor agreed with that assessment. In 2008, Wilma decided on another revision to her trust in which she wanted Mike to receive her home and automobile when she died. Wilma's doctor confirmed that she was of sound mind and competent to make her own decisions. Wilma provided handwritten statements to her attorney expressing disappointment in Bill and David and expressing her desire that Mike receive more. Wilma was disappointed that her sons did not come visit or offer to help either before or after their father died. She did not inform Bill, David, or Mike of any of the revisions she made to her trust.

In 2015, Wilma deeded the acreage from her trust to herself individually, and then Wilma executed a beneficiary deed so that she would own the 600 acres for her lifetime, and the land would go to her grandson Mike at her death. Her attorney believed her to be competent to execute the deeds and that she understood what she was doing.

As Wilma's health began to decline, Wilma's attorney advised Mike that Wilma had executed the warranty deed and the beneficiary deed. Those deeds were delivered to Mike, and he took them to be recorded in January 2017. Wilma died in August 2020.

In December 2020, Bill and David filed a complaint in circuit court against Mike seeking to set aside Wilma's transfers of the property. Bill and David asked the court to "undo" Wilma's changes to her trust and her subsequent conveyances under a breach-of-a-family-settlement theory, or they wanted a constructive trust established regarding the farmland. The circuit court ordered that Mike not transfer any interest in the farmland while litigation was pending. Mike sought a declaratory judgment establishing that he was the owner of the farmland in line with the beneficiary deed. After a bench trial in May 2021, the circuit court found in favor of Mike, and this appeal followed.

Following a bench trial, our standard of review asks whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, 602 S.W.3d 726. Disputed facts and determinations of witness credibility are within the province of the circuit court. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Pop-A-Duck, Inc. v. Gardner*, 2022 Ark. App. 88, 642 S.W.3d 220.

Bill and David first argue that the circuit court clearly erred by finding that there was no implied or actual family agreement created when the beneficiaries of the 1984 deed quitclaimed their interests back to Preston and Wilma. It is true that family-settlement

6

agreements are favorites of the law. *Machen v. Machen*, 2011 Ark. 531, 385 S.W.3d 278. Courts of equity have uniformly upheld and sustained family arrangements in reference to property, where no fraud or imposition was practiced. *Id.* The motive in such cases is to preserve the peace and harmony of families. *Id.* It is not necessary that there be a previous dispute or controversy between the members of the family before a valid family settlement may be made. *Id.* However, there must first be a meeting of the minds, and if there is no meeting of the minds, there is no contract. *City of Bethel Heights v. Gregory A. Kendrick Revocable Living Tr.*, 2017 Ark. App. 78, 515 S.W.3d 135. The circuit court found that there was no contract, implied or otherwise, and we cannot disagree. There is no evidence that Wilma agreed to such an arrangement. In 2000, Wilma initially divided the land in the trust in accordance with the 1984 deed, but she made no promise not to change her mind about the provisions in her revocable trust, which she did more than once. Both David and Bill were aware of what the term "revocable" meant. In fact, Bill encouraged his children not to sign any deed. Bill admittedly wanted to "derail" the estate plans after he had deeded back his interest in the land. These actions belie Bill's contention that there was a binding family-settlement agreement. David knew what "revocable" meant; he just presumed that no changes would be made. We hold that the circuit court did not clearly err in finding that there was no implied contract or family-settlement agreement.

Bill and David next argue that the circuit court clearly erred in refusing to impose a constructive trust on the farmland because not doing so permits Mike to be unjustly enriched. Bill and David assert that their mother "was guilty of at least constructive fraud

7

when she violated the promises that had been made in order to recover the interest in the farmland that had been conveyed under the 1984 Warranty Deed." We disagree.

A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005). The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of a fiduciary duty, or wrongful disposition of another's property. *Id.* A constructive trust normally arises without regard to the intention of the person who transferred the property. *Id.*

In essence, Bill and David claim that their father's explanations of the need to have the property deeded back to them constituted a silent promise by, or an equitable duty on, Wilma to keep her revocable trust intact with no changes whatsoever from and after 2000 until her death in 2020. Both Bill and David knew that their parents created revocable living trusts. Bill was immediately unhappy about having deeded his interest back to his parents. David had no meaningful involvement with or understanding of what his mother's intentions were. What Bill and David ask us to do is reweigh the evidence presented and make credibility determinations in their favor, which we are not permitted to do. *Wadley v. Wadley*, 2019 Ark. App. 549, 590 S.W.3d 754.

Bill and David raise a final point on appeal, which is that they asked the circuit court to grant them "alternate relief" in the form of holding that "the 2000 trust remains in effect without modification, or that the 1984 Warranty Deed control[s]" and that we should grant

them that relief. Bill and David present no compelling argument or authority to support this argument. We do not consider assertions of error that are unsupported by convincing legal authority or argument unless it is apparent without further research that the argument is well taken. *Pitchford v. City of Earle*, 2019 Ark. App. 251, 576 S.W.3d 103.

We have applied the proper standard of review to this appeal, and we hold that no reversible error has been presented.

Affirmed.

HARRISON, C.J., and GLADWIN, J., agree.

*Glenn Lovett, Jr., PLC*, by: *Glenn Lovett, Jr.*, for appellants.

*Branch Thompson Warmath Dale & Butler, P.A.*, by: *Robert F. Thompson*, for appellees.